# EXHIBIT 3

2015 WL 507555
United States District Court, N.D. Illinois, Eastern Division.

Martha PACK, Plaintiff,
v.
ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, Defendant.

Case No.: 13–cv–8930
|
Signed February 5, 2015

**Attorneys and Law Firms**

Timothy A. Bridge, Timothy A. Bridge, Esq., St. Charles, IL, for Plaintiff.

John R. Hayes, Illinois Attorney General, Allison Patricia Sues, Assistant Attorney General, Helena Lee Burton Wright, Office of the Attorney General, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Robert M. Dow, Jr., United States District Judge

*1 This matter is before the Court on Defendant Illinois Department of Healthcare and Family Services' motion to dismiss Plaintiff's amended complaint [22]. The Court previously granted a motion to dismiss the original complaint and gave Plaintiff 21 days to amend. Plaintiff filed an amended complaint on August 11, 2014, and Defendant moved to dismiss with prejudice shortly thereafter. For the reasons that follow, the Court grants Defendant's motion and dismisses the amended complaint with prejudice.

**I. Background**[1]

As in her original complaint, Plaintiff Martha Pack asserts four counts that relate to her employment with Defendant Illinois Department of Healthcare and Family Services ("IDHFS"). The claims have not changed from the original complaint to the amended version, and include: two violations of the Americans with Disabilities Act of 1990 ("ADA"), a violation of Title VII of the Civil Rights Act ("Title VII"), and negligent infliction of emotional distress ("NIED") under Illinois law.[2] The Court's previous memorandum opinion set forth the alleged facts underlying Plaintiff's claims, which in many respects, also have not changed in any significant manner.

In May 2007, Plaintiff was hired by IDHFS to work as an office coordinator. One of her supervisors at IDHFS was Deputy Administrator Norris Stevenson. In November 2011, Plaintiff filed a charge with the Illinois Department of Human Rights alleging that Stevenson racially harassed her. About six months later, Plaintiff withdrew her harassment complaint pursuant to a settlement agreement, in which Stevenson agreed only to communicate with Plaintiff through her immediate supervisors, and IDHFS agreed to assist in reassigning Plaintiff to a position outside of the agency. According to Plaintiff, neither Stevenson nor IDHFS complied with the agreement. Stevenson allegedly began to "conduct surveillance of [P]laintiff's activities," followed her in and out of the building, and interacted with her at work. [20], Am. Compl. at ¶ 13. IDHFS allegedly failed to reassign Plaintiff to a new position. See *id.* at ¶ 22.

Several months later, two mental health professionals, Dr. Greenberg and Dr. Salero, diagnosed Plaintiff with anxiety and panic disorders. As before, Plaintiff alleges that Dr. Greenberg recommended "reassignment" due to anxiety and panic attacks when in the presence of [ ] Stevenson." *Id.* at ¶ 15. Plaintiff newly alleges that Dr. Greenberg specifically recommended that she be reassigned "to an alternate work location" and that he advised that Plaintiff was "unable to perform any of the essential functions of her job due to the extreme nature of her anxiety and panic attacks." *Id.* at ¶¶ 14–15. She further alleges that in February 2013, Dr. Greenberg advised the Illinois Department of Central Management Services that Plaintiff "was permanently unable to work at IDHFS due to severe limitation of her functional abilities associated with her panic disorder and anxiety." *Id.* at ¶ 19. Dr. Salero "also reported [that] [P]laintiff experienced suicide ideations in May and September, 2012 due to the recurrent psychological impairment associated with her work location at IDHFS." *Id.* at ¶ 16. Plaintiff now alleges that her anxiety and panic disorders "substantially limited one or more of her major life activities including caring for herself, learning, concentrating, thinking, communicating and working." *Id.* at ¶ 27.

*2 Also added in the amended complaint is an excerpt from a letter or email that Plaintiff's counsel wrote to Stevenson on October 31, 2012. It states, in pertinent part:

> \* \* \* this correspondence shall constitute [Plaintiff's] request for reasonable accommodation in the form of work reassignment to an available position either within or without [sic] [ID]HFS. In this regard, [Plaintiff] requests [ID]HFS identify each vacant position for which [Plaintiff] may be qualified (either with or without accommodation); all job descriptions and postings relative to such positions; and state each reason [Plaintiff's] reassignment would otherwise constitute an undue hardship if granted.

*Id.* at ¶ 21. After Defendant did not reassign Plaintiff within IDHFS or transfer Plaintiff to a different agency, Plaintiff applied for and received occupational disability benefits from the State Employees' Retirement System of Illinois. *Id.* at ¶ 23.

In Count I, the failure to accommodate claim, Plaintiff newly alleges that Defendant admitted that it perceived her as an individual with a disability within the meaning of the ADA. *Id.* at ¶ 33. Specifically, Plaintiff asserts that she filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, in which she alleged that she had a disability under the Illinois Human Rights Act, of which Defendant was aware. See *id.* In its Verified Answer to the charge, Defendant allegedly stated that it did not deny that Plaintiff had a disability, as defined by the Human Rights Act, admitted that it was aware of Plaintiff's condition, and admitted that Plaintiff's work performance as an office coordinator met expectations. See *id.* As before, Plaintiff alleges that Defendant failed to reassign her; she now also alleges that Defendant failed to identify available positions outside IDHFS and states without further specificity that Defendant caused her to be "constructively discharged from [her] employment[.]" *Id.* at ¶ 34.

The allegations that comprise Counts II through IV essentially mirror those in the original complaint. In Count II, Plaintiff alleges that Defendant retaliated against her in violation of the ADA by failing to identify vacant positions for which she was qualified and by failing to reassign her to a new position. See *id.* at ¶ 41. Plaintiff alleges retaliation under Title VII for these same actions in Count III. See *id.* at ¶ 48. Count IV asserts an NIED claim based on Stevenson's actions and Defendant's indifference to Plaintiff's anxiety, which allegedly constituted "extreme negligence and reckless disregard for [her] health and well-being[.]" *Id.* at ¶ 54.

**II. Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir.1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in her favor. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir.2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the \* \* \* claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly,* 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the \* \* \* claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly,* 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.,* 631 F.3d 823, 832 (7th Cir.2011); *cf. Scott v. City of Chi.,* 195 F.3d 950, 952 (7th Cir.1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III. Discussion**

**A. Failure to Accommodate under the ADA (Count I)**

**\*3** Under the ADA, an employer must reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on

the employer. 42 U.S.C. § 12112(b)(5)(A). To establish a violation of the ADA, an employee must show that: (1) she is disabled; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer took adverse action because of her disability or failed to make a reasonable accommodation. *Winsley v. Cook County,* 563 F.3d 598, 603 (7th Cir.2009). The Court previously dismissed Count I because (1) Plaintiff failed to sufficiently allege a disability, as she only alleged that her anxiety and panic arose when in the presence of Stevenson; and (2) Plaintiff's request to work under a new supervisor did not qualify as a "reasonable accommodation" that Defendant was obligated to make. See [19], Mem. Op. at 4–8.

Plaintiff seeks to address these deficiencies by stating, without further detail, that her anxiety and panic disorders limit major life activities, including caring for herself, learning, concentrating, thinking, communicating, and working. See [20], Am. Compl. at ¶ 27. As to Defendant's alleged failure to accommodate, Plaintiff has added allegations indicating that she also requested a new position *outside* of IDHFS (as opposed to reassignment at IDHFS), but that Defendant did not identify vacant positions or transfer her. See *id.* at ¶ 34. Defendant contends that Plaintiff still fails to state a valid claim. For one, Plaintiff did not allege that she was qualified to perform the essential functions of other positions for which she was qualified. See [23], Def.'s Memo. at 4–6. Defendant also argues that Plaintiff's request for a new position does not qualify as a reasonable accommodation. See *id.* at 6–9. The Court agrees and also determines that Plaintiff still fails to sufficiently allege that she is disabled under the ADA.

**1. Disability under the ADA**

To begin, Plaintiff's allegations about her ability to perform her job indicate that her panic and anxiety disorders were not disabling within the meaning of the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities * * *; (B) a record of such an impairment; or (C) being regarded as having such an impairment * * *." 42 U.S.C. § 12102(1). Plaintiff attempts to qualify as a disabled individual under the first "substantially limits" prong, as well as under the third "regarded as" prong.

With respect to the former, the Seventh Circuit has rejected the argument that a person is disabled where the alleged disability is linked only to working alongside particular colleagues or supervisors in a particular job or work location. See *Weiler v. Household Finance Corp.,* 101 F.3d 519, 525 (7th Cir.1996). As the Court explained in *Weiler* :

> [W]ith respect to the major life activity of working, 'substantially limits' must mean significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes. [Plaintiff] claims she can do her job, but not while being supervised by [a particular supervisor]. If [Plaintiff] can do the same job for another supervisor, she can do the job, and does not qualify under the ADA.

*Id.* (internal citation omitted). See also *Scott v. Kaneland Community Unit School Dist. No. 302,* 898 F.Supp.2d 1001, 1003, 1005–06 (N.D.Ill.2012) (plaintiff-teacher failed to establish that severe attention deficit disorder and depression qualified as a disability because plaintiff was able to perform as a teacher, just not at his current school district because certain supervisors worsened his issues).

Here, Plaintiff claims that she is disabled by anxiety and panic disorders that are triggered and exacerbated by Stevenson and his presence at the same work location as Plaintiff. Although the amended complaint is not completely clear, it appears that Plaintiff also contends that she is capable of working at a different state agency where she would not experience anxiety and panic to the same degree. See [26], Pl.'s Resp. at 8; [20], Am. Compl. at ¶¶ 19, 28 (alleging that Dr. Greenberg believed that Plaintiff was no longer able to work at IDHFS, but maintaining that Plaintiff was "able to perform the essential functions of * * * other positions for which she was qualified."). In her response brief, for example, Plaintiff writes that her psychiatrist "determined she could fully perform her essential job duties if her reassignment request was granted." [26], Pl.'s Resp. at 8. The amended complaint also alleges that Dr. Greenberg recommended that Plaintiff be reassigned "due to her continued anxiety and panic attacks *when in the presence of [ ] Stevenson,*" as he believed that her symptoms were "due to the continuing *presence of [ ] Stevenson* at her work site." [20], Am. Compl. at ¶¶ 14, 15 (emphasis added). Plaintiff also requested reassignment as an accommodation for mental health issues

that resulted from "her interactions with certain agents and employees at [ID]HFS, including, but not limited to, Norris Stevenson, Deputy Administrator." *Id.* at ¶ 21. Based on these allegations, the Court again concludes that Plaintiff cannot state a claim under the ADA, despite the (formulaic) allegation that she was substantially limited in major life activities, like caring for herself. Because Plaintiff asserts that she is capable of working, just not at IDHFS where Stevenson is, Plaintiff has not sufficiently alleged that she is disabled under the ADA. See *Weiler,* 101 F.3d at 525.

**\*4** In her response brief, Plaintiff cites *Palmer v. Circuit Court of Cook Cnty.,* 117 F.3d 351 (7th Cir.1997), and argues that an individual qualifies as disabled where a personality conflict triggers a mental illness. See [26], Pl.'s Resp. at 4. In *Palmer,* the plaintiff developed depression and paranoid schizophrenic symptoms after a certain woman became her supervisor; the district court found that the plaintiff merely had a personality conflict, not a disability, because she didn't experience the symptoms prior to working with the new supervisor. See 117 F.3d at 351–52. On appeal, the Seventh Circuit explained that the plaintiff still could have a disability, even if it was triggered by a relationship with a colleague. See *id.* at 352 ("[I]f a personality conflict triggers a serious mental illness that is in turn disabling, the fact that the trigger was not itself a disabling illness is no defense. Schizophrenia and other psychoses are frequently triggered by minor accidents or other sources of normal stress[.] \* \* \* Our only point is to distinguish between the nondisabling trigger of a disabling mental illness and the mental illness itself.").

Plaintiff's reliance on *Palmer* is misplaced. The fact that Stevenson allegedly triggered Plaintiff's anxiety and panic disorders is not fatal to her claim, see *Palmer,* 117 F.3d at 352; but Plaintiff's contention that her anxiety and panic would not interfere with her ability to perform her job if she worked for a new supervisor or was transferred to a new agency means that Plaintiff does not have a disability that requires accommodation under the ADA. See [19], Mem. Op. at 5–6 (citing *Weiler,* 101 F.3d at 525; *Schneiker v. Fortis Insurance Co.,* 200 F.3d 1055, 1062 (7th Cir.2000)). And even if Plaintiff does qualify as disabled under the ADA, her employer was not required to accommodate her by moving her into a different position under a new supervisor, as will be discussed below.

Plaintiff also argues that she qualifies as disabled because she alleges that Defendant "regarded" her as individual with a disability. Under the 2008 Amendments to the ADA:

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A). However, the Amendments "clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.' " *Powers v. USF Holland, Inc.,* 667 F.3d 815, 823 n.7 (7th Cir.2011) (citing 42 U.S.C. § 12201(h)). See also *Majors v. General Elec. Co.,* 714 F.3d 527, 535 n.4 (7th Cir.2013). Because Count I is premised on Defendant's alleged failure to accommodate—and Plaintiff is not in fact disabled, as discussed above—Plaintiff cannot proceed based on allegations that Defendant merely regarded her as disabled. See *Powers,* 667 F.3d at 823 n.7 (under the 2008 Amendments, plaintiff would be unable to proceed on his reasonable accommodation claim that was premised on defendant's perception that plaintiff was disabled because an individual who is merely regarded as disabled is not entitled to reasonable accommodations).

For all of these reasons, the Court concludes that Plaintiff has not sufficiently alleged that she is disabled, and therefore Count I must be dismissed.

**2. Reassignment within IDHFS**

As before, Plaintiff alleges that she sought, but that Defendant failed to give her, a new position at IDHFS. See [20], Am. Compl. at ¶¶ 21, 22, 34. The Court already has determined, however, that the "ADA does not require IDHFS to transfer Plaintiff to work for a supervisor other than Stevenson." [19], Mem. Op. at 7. The Court explained:

> Plaintiff has pleaded herself out of court because her allegations indicate that she only requested, and would only accept, one accommodation—to work under a new supervisor—which courts have repeatedly held is not a reasonable request.

**\*5** *Id.* Accordingly, to the extent that Plaintiff continues to allege that not reassigning her within IDHFS (*i.e.,* not providing her with a new supervisor) violated the ADA, her claim is dismissed, as this request is not reasonable. See *id.* at 7–8 (collecting cases).

The claim also must be dismissed because Plaintiff now alleges that she "was permanently unable to work at IDHFS" and was "unable to perform any of the essential functions of her job" there. See [20], Am. Compl. at ¶¶ 15, 19. A valid ADA claim requires a plaintiff to allege that she is a "qualified individual with a disability," meaning qualified to perform the essential functions of the job that the plaintiff holds or desires. *Weiler,* 101 F.3d at 525. Because Plaintiff has alleged that she permanently was unable to work at IDHFS due to her mental health issues, she may not at the same time contend that IDHFS violated the ADA by failing to give her a new position there. See, *e.g., id.* (" \* \* \* [Plaintiff's] psychotherapist stated that [Plaintiff] could not return to work [ ] in any position. \* \* \* Therefore, [Plaintiff] cannot establish that she is a "qualified individual with a disability" under the ADA—she was no longer qualified to do the job, and no accommodation would allow her to do it.").

Plaintiff's reasonable accommodation claim that is premised on Defendant's failure to reassign her within IDHFS therefore is dismissed for these additional reasons.

### 3. Transfer outside of IDHFS

Plaintiff's other requested accommodation—being transferred to a new position outside of IDHFS at a different state agency—has the same flaws that the Court identified in its prior opinion. Although Plaintiff styles her new allegations as seeking a "transfer" (not a reassignment within the agency), like before, Plaintiff still is seeking a new supervisor or to be placed at a location where Stevenson is not present. The ADA does not require such an accommodation. See *Weiler,* 101 F.3d at 526; *Bradford v. City of Chi.,* 121 Fed.Appx. 137, 139–40 (7th Cir.2005).

*Bradford* is instructive. There, a plaintiff requested that he be transferred to a different location because his bipolar disorder would be worsened by the stress of working with certain coworkers who considered him mentally disturbed. 121 Fed.Appx. at 139. As in this case, a doctor advised transfer to a new work location to avoid a worsening of the plaintiff's condition, due to the stress that the plaintiff associated with his office. *Id.* The Seventh Circuit, citing *Weiler,* affirmed the district court's grant of summary judgment to the employer, because a transfer request premised on "a conflict with a supervisor or with coworkers [that] has led (or has the potential to lead) to significant medical problems," is not required under the ADA. *Id.* at 139–40. [3]

**\*6** In her response brief, Plaintiff argues that a request for an accommodation "in the form of reassignment/transfer is entirely appropriate" where "interactions with a supervisor cause an employee to suffer extreme mental impairments." [26], Pl.'s Resp. at 10. In support, Plaintiff contends that the Court's reliance on *Weiler* is questionable, as the case predates the 2008 Amendments to the ADA. See *id.* at 4. Plaintiff does not explain which particular change to the ADA calls *Weiler* into question. As discussed in the Court's prior memorandum opinion, the Amendments, in part, broadened the definition of a "disability" by changing what qualifies as "substantially limiting" a major life activity. [4] The Court fails to see how this change, or another change not specified by Plaintiff, undermines *Weiler* 's holding that the accommodation that Plaintiff sought is not reasonable.

Finally, Plaintiff contends that Defendant failed to cooperate with Plaintiff in good faith because no one helped her find a new position after her lawyer sent Stevenson a letter requesting that IDHFS identify every vacant position for which Plaintiff was qualified. See [26], Pl.'s Resp. at 12. Plaintiff contends that IDHFS was required to identify vacant positions under *EEOC v. United Airlines,* 693 F.3d 760 (7th Cir.2012). In *United Airlines,* the Seventh Circuit overruled *EEOC v. Humiston–Keeling,* 227 F.3d 1024 (7th Cir.2000), and held that "the ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer." 693 F.3d at 761. [5]

As discussed above, however, Plaintiff alleged that she was not qualified to work in *any* position at IDHFS and that she could only work outside of IDHFS. With respect to such other positions outside of IDHFS, it's not clear (and the parties have not addressed) whether Defendant IDHFS even would be obligated (or able) to appoint Plaintiff to a position at a different Illinois agency or department. In any case, the Court has explained that Plaintiff's proposed accommodation was not reasonable under well-established Seventh Circuit law and therefore not required.

Plaintiff's reasonable accommodation claim that is premised on Defendant's failure to transfer her to a job outside of IDHFS therefore also is dismissed because Plaintiff does not —and apparently cannot—allege that Defendant denied her a reasonable accommodation.

### B. Retaliation under the ADA (Count II)

Plaintiff also alleges retaliation under the ADA. The ADA "prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim." *Squibb v. Mem'l Med. Ctr.,* 497 F.3d 775, 786 (7th Cir.2007). To state a valid claim, Plaintiff must allege that (1) she engaged in a statutorily protected activity, (2) the retaliator was aware of the protected activity, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action. *Id.* The Court previously dismissed this count as duplicative of Count I, because Plaintiff failed to sufficiently allege that she suffered adverse employment actions, as she merely identified and restated the actions that comprised her failure to accommodate claim. See [19], Memo. Op. at 9 (citing *Imbody v. C & R Plating Corp.,* 2009 WL 196251, at *4 (N.D.Ind. Jan. 23, 2009)); *Pagliaroni v. Daimler Chrysler Corp.,* 2006 WL 2668157, at *9 (E.D.Wis. Sept. 15, 2006)).

 *7  Plaintiff has not amended the allegations that comprise her retaliation claim to attempt to cure the deficiencies that the Court last identified. Nor did Plaintiff respond to Defendant's argument that this claim should be dismissed for the same reason as before. Plaintiff therefore has conceded this point, and Count II is dismissed for the reasons that the Court explained in its previous memorandum opinion. See *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument * * * results in waiver" and a party's "silence" in response to an arguments leads to the conclusion that a point is conceded).

### C. Title VII Retaliation (Count III)

Plaintiff also alleges that Defendant violated the anti-retaliation provision in Title VII. As with Count II, Plaintiff did not attempt to cure the deficiencies that the Court previously identified. [6] Title VII provides that an employer may not "discharge any individual * * * because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A Title VII retaliation claim requires that the plaintiff show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action. *McKenzie v. Illinois Dep't of Transportation,* 92 F.3d 473, 483 (7th Cir.1996). The Court previously dismissed this claim because it determined that Plaintiff did not adequately plead that she was subjected to adverse employment actions. See [19], Mem. Op. at 10. Defendant moves to dismiss for this same reason.

Plaintiff maintains that she has asserted adverse employment actions because she alleges that Defendant failed to identify positions outside of IDHFS for which she was qualified and failed to reassign her to a new position, thereby leaving her with no alternative other than applying for disability benefits. See [26], Pl.'s Resp. at 14. As the Court previously explained, however:

> Plaintiff's claim that IDHFS retaliated against her by denying her request for an accommodation is insufficient to serve as a stand-alone retaliation claim because these allegations merely restate Count I. Further, Defendant had no legal obligation to allow Plaintiff to control the assignment of her supervisor and therefore Defendant's refusal to assign Plaintiff to a new supervisor does not constitute an adverse employment action.

[19], Mem. Op. at 10. As the Court has explained, Defendant also had no legal obligation to transfer Plaintiff to a different agency so she could work under a new supervisor. Plaintiff does not address this point in her response, and instead cites *Arizanovska v. Wal–Mart Stores, Inc.,* 682 F.3d 698, 704 (7th Cir.2012), for the proposition that Defendant violated the ADA because it forced her "to end her career at the agency." [26], Pl.'s Resp. at 14.

*Arizanovska* does not aid Plaintiff. To the contrary, *Arizanovska* considered whether being placed on an unpaid leave of absence qualified as a "materially adverse employment action" under Title VII. See *Arizanovska,* 682 F.3d at 703–04. The Court found that it did, as the plaintiff "went from a part-time employee to unpaid and temporarily unemployed," after her employer required her to take an unpaid leave of absence. *Id.* at 704. Here, of course,

Plaintiff alleges that she applied for and received occupational disability benefits after Defendant refused to reassign her to a new supervisor or to a different agency. [20], Am. Compl. at ¶ 23. Finding no reason to reconsider the Court's prior ruling on essentially identical allegations, the Court dismisses Count III for the same reasons explained before. See [19], Mem. Op. at 9–11.

### D. Negligent Infliction of Emotional Distress (Count IV)

*8 Plaintiff's final claim alleges negligent infliction of emotional distress under Illinois common law ("NIED"). With Plaintiff's federal ADA and Title VII claims no longer pending, the Court must determine whether to retain jurisdiction over this claim. As before, the Court concludes that there is no reason to depart from this circuit's "usual practice" of "dismiss[ing] without prejudice [a plaintiff's] state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir.1999). As noted previously, there is no concern that the statute of limitations will preclude Plaintiff from refiling her NIED claim in state court, if she wishes, because Illinois law gives Plaintiff one year from a dismissal on jurisdictional grounds of state law claims to re-file in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir.2008). Nor have substantial resources been committed to Plaintiff's NIED claim. See *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir.1994). For these reasons, Count IV is dismissed without prejudice.

### IV. Conclusion

For all of the reasons stated above, the Court grants Defendant's motion to dismiss the amended complaint [22]. Because Plaintiff has not cured the deficiencies that the Court detailed in its previous memorandum opinion—and for some counts, has not amended at all—the Court dismisses Counts I, II, and III of the amended complaint [20] with prejudice. The state law count (Count IV) is dismissed without prejudice.

### All Citations

Not Reported in Fed. Supp., 2015 WL 507555, 31 A.D. Cases 407

### Footnotes

1    In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's amended complaint and makes all reasonable inferences in her favor. See, *e.g., McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 879 (7th Cir.2012).

2    Plaintiff styled her amended complaint as a "second amended complaint," see [20], but the Court will refer to this pleading as the "amended complaint," as Plaintiff only has amended her complaint once.

3    *Weiler* addressed a similar situation in which a plaintiff who suffered from depression and anxiety sought to work for a different supervisor. The Seventh Circuit affirmed the district court's grant of summary judgment to the employer, finding that the employer was not required to transfer the plaintiff to a new position. See *Weiler,* 101 F.3d at 526 ("Weiler's solution is that she return to work under a different supervisor. But that decision remains with the employer. In essence, Weiler asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility.").

4    Under the Amendments (1) a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is "transitory and minor" (defined as lasting six months or less); and (2) "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Gogos v. AMS Mech. Sys., Inc.,* 737 F.3d 1170, 172–73 (7th Cir.2013) (quoting 42 U.S.C. § 12102(4)(D) (citing 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.2(j)(1)(ix)).

5    *Humiston–Keeling* had held that the "ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire

    the best applicant for the particular job in question." *United Airlines,* 693 F.3d at 762 (quoting *Humiston–Keeling,* 227 F.3d at 1029).

6     The allegations in Count III are the same as those in the original complaint, except that, whereas before Plaintiff alleged that Stevenson engaged in sexually harassing conduct, [1], Compl. at ¶¶ 41–42, Plaintiff now asserts that Stevenson engaged in "racially harassing" conduct, [20], Am. Compl. at ¶¶ 46–47.

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.