# EXHIBIT 4

269 Fed.Appx. 498
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Larry Gene WATSON, Plaintiff–Appellant,
v.
TEXAS YOUTH COMMISSION, Defendant–Appellee.

No. 07–50295
|
Summary Calendar.
|
March 13, 2008.

**Synopsis**
**Background:** Employee brought action against employer, alleging discrimination under federal law and Texas retaliation law. Employer moved for summary judgment. The United States District Court for the Western District of Texas, granted motion. Employee appealed.

**Holdings:** The Court of Appeals held that:

employee did not have actual disability;

employer did not regard employee as disabled;

employer's alleged knowledge that employee filed claim for worker's compensation benefits was insufficient to establish prima facie case of employment retaliation under Texas law; and

lapse in time was insufficient to establish prima facie case of retaliation under Texas law.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

**Attorneys and Law Firms**

**\*499** Steve Leigh Moody, McDonald Moody & McKethan, Waco, TX, for Plaintiff–Appellant.

Daniel Clark Perkins, Assistant Attorney General, Office of the Attorney General, General Litigation Division, Austin, TX, for Defendant–Appellee.

Appeal from the United States District Court for the Western District of Texas, USDC No. 6:05–CV–422.

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

**Opinion**

PER CURIAM:[*]

**\*\*1** Larry Gene Watson appeals from a grant of summary judgment in favor of appellee Texas Youth Commission (TYC). We affirm.

I

Watson was employed as a juvenile corrections officer (JCO) at a TYC facility, which houses underage violators of Texas penal law. In March 2003, while supervising a group of inmates, Watson was punched in the face by one of the inmates. Consequentially, Watson developed traumatic mydriasis and photophobia, which cause his vision to be extremely sensitive to sunlight and intense indoor lighting.

Watson returned to work the day after the incident. He worked full time and without formal complaint until December 2003 when he requested being excused from working in bright light or sunlight and working overtime if it meant having to work in bright light or sunlight. TYC primarily scheduled Watson for night shifts and allowed him to wear sunglasses and a hat while on duty. However, he was not excused from overtime.

For four months, Watson worked in various capacities before TYC eventually assigned Watson to a JCO position in Dorm A. One of the requirements of a JCO is the ability to work additional shifts that may extend into daytime hours. Watson requested waiver or reassignment. TYC refused to waive the overtime requirement and informed Watson that there were no other available positions with a comparable paygrade. Watson subsequently resigned in August 2004.

Watson filed a charge with the Equal Employment Opportunity Commission asserting termination because of a real or perceived disability. Watson timely filed this lawsuit upon receipt of his right-to-sue letter alleging discrimination under federal law and retaliation under Texas law. The district court granted TYC's motion for summary judgment.

Watson timely appealed arguing that the district court improperly evaluated evidence that he was "otherwise qualified" to perform the position of Night Operations Director. He further argues that he presented sufficient evidence to create a fact question on whether an adverse action was **\*500** taken against him in retaliation for filing a workers' compensation claim.

## II

We review a district court's grant of summary judgment de novo, applying the same standard as the trial court.[1] Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law.[2] To survive a motion for summary judgment, the nonmovant must come forward with specific facts showing that there is a genuine issue of material fact.[3]

### A

Watson argues that the district court erred in granting summary judgment because the evidence in the record showed that he had been removed from an accommodating position that he was "otherwise qualified" to perform. However, this argument presupposes that Watson's condition qualifies as a disability entitling him to an accommodation under the Rehabilitation Act.[4]

**\*\*2** To qualify as disabled under the Rehabilitation Act, one must be a person who:

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(ii) has a record of such an impairment; or

(iii) is regarded as having such an impairment.[5]

The first two prongs require a showing that the individual claiming protection is actually disabled while the third option is available without such a showing.[6]

To be actually disabled under the Rehabilitation Act, one must have a condition that "substantially limits" a "major life activity."[7] The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[8] The term "substantially limits" means either (a) an inability "to perform a major life activity that the average person in the general population can perform" or (b) a significant restriction "as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[9]

The district court concluded that Watson offered no evidence that he was either (a) completely unable to see or (b) significantly restricted in the condition, manner, or duration of his sight compared to the general population. Watson does not contest the first finding, but argues that his condition **\*501** significantly restricts his ability to see compared to the general population. However, we held in *Still v. Freeport McMoran, Inc.* that a plaintiff who was totally blind in one eye is not substantially limited in his sight.[10] Watson is able to see out of his injured eye. Although Watson attempts to distinguish our holding in *Still* by arguing that the injured eye's inability to dilate more substantially limits his ability to see than the plaintiff in *Still*, we disagree that *Still* does not apply. Moreover, the record shows that Watson continued to work in his regularly assigned position for nine months and that he currently drives a truck professionally and passed the vision test necessary for such a license. Accordingly, Watson failed to meet his initial burden of showing actual disability.

As the district court noted, Watson could prove his *prima facie* Rehabilitation Act case by showing that TYC regarded him as disabled. To be regarded as disabled, one must:

(1) have a physical or mental impairment that does not substantially

limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) have no actual impairment at all, but be treated by an employer as having a substantially limiting impairment.[11]

**\*\*3** Watson's arguments indicate that he intends to meet the first standard.

Watson could show that TYC treated him as having a substantial limitation to a major life activity by presenting evidence that TYC limited his job duties or undermined his return to a full range of duties.[12] However, Watson failed to meet his burden necessary to support such a conclusion. The record evidence shows that Watson and not TYC contemplated a limitation of his duties. TYC continued to give Watson a full range of responsibilities including requesting his help during daytime hours. An employee "cannot succeed on the 'regarded as disabled' element ... when [his] employer never limited [his] job duties or hindered [his] return to the full range of duties."[13] Accordingly, the district court properly concluded that TYC did not regard Watson as disabled.

Watson argues that the district court erred in concluding that Watson failed to show that he was "otherwise qualified" for a position as Night Operations Director. We do not need to address this argument given our conclusion that the district court properly determined that Watson was not a disabled individual and thus not entitled to protection under the Rehabilitation Act.[14] Moreover, there is no evidence in the record indicating that Watson was ever placed into the accommodating position of Night Operations Director as he claims. While there were efforts to schedule Watson for nighttime duties, Watson was classified as a JCO at all times. This position required, as an essential element of the job, that he be available to work overtime. Accordingly, we affirm the district court's grant of summary judgment in favor of TYC on Watson's Rehabilitation Act claim.

**B**

Watson further argues that the district court inappropriately granted summary **\*502** judgment on his state retaliation claim because he presented evidence showing an inference of retaliation. Watson contends that he is able to show that his subsequent transfers to non-accommodating positions provide an inference of retaliation.

Section 451.001 of the Texas Labor Code provides that "[a] person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith...."[15] The burden of proof lies with the plaintiff to demonstrate a causal link between the adverse action and the institution of that plaintiff's worker's compensation proceeding.[16]

A plaintiff may prove a causal link through circumstantial evidence or reasonable inferences.[17] To prove a casual link, a plaintiff may rely upon any of the following:

> (1) the employer's knowledge of the compensation claim by those making the decision to terminate;
>
> (2) a negative attitude towards the employee's injured condition;
>
> (3) failure to adhere to established company policies;
>
> (4) discriminatory treatment of the injured employee in comparison to similarly situated employees; and
>
> **\*\*4** (5) providing incentives to refrain from reporting on-the-job injuries.[18]

Further, retaliatory motive can be inferred from little or no lapse in time from when the plaintiff engaged in the protected activity to the employer's adverse employment action.[19]

As the district court concluded, Watson offered no circumstantial evidence beyond TYC's knowledge that Watson had filed a claim for worker's compensation benefits. However, "mere knowledge" is insufficient under Texas law to establish a *prima facie* case for employment retaliation.[20] Nor does the lapse between Watson's filing of his worker's compensation claim and his resignation establish a causal connection. Watson filed his worker's compensation claim on March 20, 2003 and was not terminated until after he

resigned 18 months later. Even assuming that Watson was transferred from a nighttime position to a daytime JCO position, this did not occur until 13 months after he filed his worker's compensation claim. This lapse of time is simply too remote to support an inference of retaliation.[21] Accordingly, the district court did not err in concluding that Watson had failed to establish a *prima facie* case of retaliation and awarding summary judgment to TYC.

**\*503** For the foregoing reasons, the judgment of the district court is AFFIRMED.

**All Citations**

269 Fed.Appx. 498, 2008 WL 687278, 20 A.D. Cases 1019, 36 NDLR P 183

## Footnotes

| | |
|---|---|
| \* | Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4. |
| 1 | *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 205 (5th Cir.1998). |
| 2 | *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* FED.R.CIV.P. 56(c). |
| 3 | *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). |
| 4 | *See Chiari v. City of League City,* 920 F.2d 311, 315 (5th Cir.1991) (noting that the initial element of a Rehabilitation Act claim is that plaintiff is a disabled individual). |
| 5 | 29 U.S.C. § 705(20)(B). |
| 6 | *Hileman v. City of Dallas, Tex.,* 115 F.3d 352, 355 (5th Cir.1997). |
| 7 | 29 C.F.R. §§ 1614.203(b), 1630.2(j)(1). |
| 8 | *Id.* § 1630.2(i). |
| 9 | *Id.* § 1630.2(j)(1). |
| 10 | 120 F.3d 50, 52 (5th Cir.1997). |
| 11 | *McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 281 (5th Cir.2000). |
| 12 | *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 508 (5th Cir.2003). |
| 13 | *Id.* |
| 14 | *See Chiari v. City of League City,* 920 F.2d 311, 315 (5th Cir.1991). |
| 15 | TEX. LAB.CODE ANN. § 451.001. |
| 16 | TEX. LAB.CODE ANN. § 451.002(c). |
| 17 | *Lee v. Haynes & Boone, L.L.P.,* 129 S.W.3d 192, 196 (Tex.App.—Dallas 2004, pet. denied). |

| | |
|---|---|
| 18 | *Wyler Indus. Works v. Garcia,* 999 S.W.2d 494, 501 (Tex.App.—El Paso 1999, no pet.). |
| 19 | *Johnson v. City of Houston,* 203 S.W.3d 7, 11–12 (Tex.App.—Houston [14th Dist.] 2006, pet. denied). |
| 20 | *McIntyre v. Lockheed Corp.,* 970 S.W.2d 695, 698 (Tex.App.—Fort Worth 1998, no pet.). |
| 21 | *Green v. Lowe's Home Ctrs., Inc.,* 199 S.W.3d 514, 522–23 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) (standing alone, a four and one half month delay between filing of claim and discharge of an employee is insufficient to establish causal link); *Grizzle v. Travelers Health Network,* 14 F.3d 261, 268 (5th Cir.1994) (lapse of ten months between complaint and termination does not support an inference of retaliation). |

* * *

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2024 Thomson Reuters. No claim to original U.S. Government Works. 5