# EXHIBIT 7

2003 WL 21756094
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Cleofoster BAPTISTE, Plaintiff,

v.

LAQUILA–PINNACLE, Defendant.

No. 02 Civ.5540 AKH.
|
July 30, 2003.

**Synopsis**
Former employee, a black Antiguan, sued his former employer, alleging that he was the subject of illegal discrimination based on race and national origin, in the form of failure to hire, disparagement and termination, in violation of Title VII, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA), and he additionally brought a claim of retaliation. On a defense motion for summary judgment, the District Court, Hellerstein, J., held that: (1) employee failed to prove that his termination was based on his national origin and race; (2) elimination or derogation of seniority rights is not sufficient by itself to raise an inference of age discrimination in violation of the ADEA; (3) employee failed to prove that he suffered from a disability, or suffered any adverse employment action because of a disability; and (4) employee's seeking a job from a supervisor after being rejected by a lower-ranked foreman was not protected behavior able to support a retaliation claim.

Motion granted.

West Headnotes (4)

[1]  **Civil Rights**  Discharge or Layoff
     **Civil Rights**  Motive or Intent; Pretext

Former employee failed to prove that his termination was based on his national origin and race, in violation of Title VII, despite a claim that a foreman, a Puerto Rican, hired three Puerto Ricans and not the employee; employee failed to show pretextual nature of employer's claims that the employee did not show up to work and failed to inform his supervisors, that his work was consistently substandard, that his attitude was a problem, and that the employee routinely worked less than the expected number of work hours. Civil Rights Act of 1964, § 703(a)(1), as amended, 42 U.S.C.A. § 2000e-2(a)(1).

[2]  **Civil Rights**  Age Discrimination

Elimination or derogation of seniority rights is not sufficient by itself to raise an inference of age discrimination in violation of the Age Discrimination in Employment Act (ADEA). Age Discrimination in Employment Act of 1967, § 2 et seq, 29 U.S.C.A. § 621 et seq.

1 Case that cites this headnote

[3]  **Civil Rights**  Particular Conditions, Limitations, and Impairments
     **Civil Rights**  Particular Cases

Injured former employee failed to prove that he suffered from a disability, or suffered some adverse employment action because of his disability, as required to prove discrimination under the Americans with Disabilities Act (ADA); after his injury, he continued working, he demonstrated no substantial limitation of any life activity, and he was terminated, along with other union employees, when the project he was working on was over. Americans with Disabilities Act of 1990, § 3, 42 U.S.C.A. § 12102.

[4]  **Civil Rights**  Activities Protected

Employee's seeking a job from a supervisor after being rejected by a lower-ranked foreman was not directed at an unlawful employment practice, and thus, would not support a retaliation claim against the employer regarding the employee's termination; employee was not looking to remedy discrimination.

*MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

HELLERSTEIN, J.

**\*1** Plaintiff Cleofoster Baptiste brings this action against his former employer, Laquila–Pinnacle, alleging that he was the subject of illegal discrimination based on race and national origin, in the form of failure to hire, disparagement and termination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34, and the Americans with Disabilities Act, 42 U.S.C.S. § 12112. He also brings a claim of retaliation. Defendant moves for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons below, defendant's motion is granted and the case is dismissed.

I. *Background*

Plaintiff Cleofoster Baptiste, a 44 year-old black Antiguan Rastafarian, is a carpenter and a member of the Brotherhood of Carpenters, District Council of New York ("the union"). Defendant Laquila–Pinnacle, a contractor in the New York metropolitan area, relies solely upon the union to provide carpenters for its various projects. For a given site, defendant requests a specific number of workers from the union, and pays and supervises them. Generally, workers remain employed at a site until the project is completed. Defendant attests that no one has ever before brought an employment discrimination claim against it.

Plaintiff worked sporadically for defendant from April 1997 to November 1999, when he was terminated. This included work at the 108th Street Desales project from February 1999 through April 1999, and work at the 77th Street Empire project from April through July 1999. In June 1999, at the Empire project, plaintiff suffered a foot injury. After his injury, he continued working, suffered another injury, and was dismissed upon the project's completion in July with the other carpenters. He contends this termination was due to his injury and the discriminatory attitude of foreman Jose Garcia, who is Puerto Rican. Between July 1999 and October 1999, plaintiff obtained work through other employers.

In October 1999, after working for a series of other contractors, plaintiff sought work with defendant at the 410 East 61st Street project. Plaintiff claims that Mr. Garcia passed him over in favor of Puerto Rican workers. Defendant subsequently hired plaintiff to work at the site. There, plaintiff claims, Mr. Garcia would hover over him, "stressing" him. Plaintiff felt that defendant's failure to hire him was a violation of union seniority norms of favoring workers who had been on the job longer, and filed a complaint with the union. The union took no action.

On November 28, 1999, while working at the East 61st Street project, plaintiff was arrested and pled guilty to 3rd degree assault. He had, by his own account, "exploded at home," allegedly because of the stress Mr. Garcia caused. Because plaintiff was incarcerated, he failed to show up to work the next day and did not inform defendant he would be missing work. Plaintiff was terminated on November 30, 1999, for failure to report to work or notify defendant and because of his track record on the job. Plaintiff often worked less than the full 35–hour union work week, and defendant maintains that his work was consistently substandard. After termination, plaintiff approached one of defendant's owners to get his job back; after a short meeting among managers, the termination was upheld.

**\*2** On December 13, 1999, plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"). The SDHR found no probable cause to believe that defendant was involved in unlawful discrimination. Its investigation of the East 61st Street project found that, of the 44 workers hired for the job between October and December 1999, only five were Puerto Rican, while more than 44% were Black. The SDHR concluded that plaintiff was terminated for failure to appear at work without notifying defendant.

The Equal Employment Opportunity Commission ("EEOC") investigated plaintiff's allegations and concluded that it had insufficient information to establish defendant's violation of Title VII, the ADA or the ADEA. Additionally, it found that plaintiff's disability allegations did not involve a disability covered by the ADA. The EEOC issued a Right to Sue letter on May 29, 2002. Plaintiff now brings this action, and defendant moves for summary judgment.

II. *Summary Judgment Standard*
Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, *see Harlen Assocs. v. Village of Mineola,* 273 F.3d 494, 498 (2d Cir.2001), the non-moving party must raise more than just "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen,* 273 F.3d at 499. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

Summary judgment is appropriate "when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587. Where intent is at issue in an employment discrimination case, the Second Circuit has urged caution in granting summary judgment, since direct evidence of intentional discrimination is available only in the rarest of instances. *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999); *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). However, summary judgment is by no means precluded in employment discrimination cases. Indeed, the Second Circuit has noted that the "salutary purposes of summary judgment– avoiding protracted, expensive and harassing trials–apply no less to discrimination cases than to ... other areas of litigation." *Id.* at 998.

III. *Title VII Discrimination Claim*

 *3 [1] Plaintiff claims that his termination was a discriminatory action taken on the basis of his national origin and race in violation of Title VII. Title VII, in relevant part, makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with regard to his compensation, terms, conditions, or privileges of employment, "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Courts analyzing discrimination claims under Title VII apply the three step burdenshifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). *See Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 443 (2d Cir.1999).

In the first stage, plaintiff bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision of which plaintiff complains. *See Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). As noted by the Supreme Court in *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), "[t]his burden is one of production, not persuasion." If the defendant is able to provide a nondiscriminatory basis for the employment decision, the burden shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's reasons are merely pretext for discrimination. *See id.* at 143; *St. Mary's Honor Ctr.,* 509 U.S. at 510–11.

At this stage, in order to prevail on a motion for summary judgment, the plaintiff must submit "evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by ... discrimination." *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997). Evidence "contradicting the employer's given reason–without more–does not necessarily give logical support to an inference of discrimination," and is therefore insufficient to satisfy plaintiff's burden. *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000).

A. *Plaintiff's Prima Facie Case*

In order to establish a prima facie case, plaintiff must demonstrate: (1) he belongs to a protected class; (2) he was qualified for the position held and performed his duties satisfactorily; (3) he suffered an adverse employment action; and (4) this action occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *Tarshis v. Riese Org.,* 211 F.3d 30, 36 (2d Cir.2000). The proof a plaintiff is required to present at this stage is minimal. *Id.; De La Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 20 (2d Cir.1996).

 *4 As a black Antiguan man who has been fired, plaintiff satisfies the first and third prongs. And, even taking into account assertions about the unsatisfactory number of hours plaintiff worked and the substandard quality of his work, his performance meets the low bar required to satisfy the second prong. To shift the burden on work qualification, the moving party need only show possession of the basic skills required

for the job. *Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir.2001) (quoting *Owens v. New York City Hous. Auth. .,* 934 F.2d 405, 409 (2d Cir.1991)). Defendant concedes that plaintiff was a capable worker, and at least performed satisfactorily early in his employment. Indeed, his hiring creates a legal inference of qualification. *Id.*

There is some question as to whether plaintiff has demonstrated circumstances leading to an inference of discrimination. He cannot point to any other employees who were retained after unexplained absences from work and presents no statistical evidence that defendant discriminates against Blacks, *c.f. Windham v. Time Warner,* 275 F.3d 179, 188 (2d Cir.2001) (plaintiffs demonstrated that they were laid off while others not sharing their race were not). But plaintiff does allege that foreman Garcia, a Puerto Rican, hired three Puerto Ricans and not him. Although this argument is not a sufficient proof of discrimination, the burden of production for making a prima facie case of discrimination is minimal, and I hold that it is sufficient to raise an inference of discrimination to shift the burden to the defendant.

### B. *Defendant's Legitimate Reasons*

Defendant articulates a legitimate, nondiscriminatory reason for its termination of plaintiff. In November 1999, plaintiff did not show up to work and failed to inform his supervisors. Moreover, defendant's office manager, Geraldine DiNatale, declared that plaintiff's work was consistently substandard and his attitude was a problem. Plaintiff also routinely worked less than the expected number of work hours. These reasons suffice to rebut plaintiff's prima facie demonstration of discrimination.

### C. *Pretext*

Plaintiff has not demonstrated that a rational juror could infer that the legitimate reasons for the adverse employment action were actually a pretext for discrimination. *Grady,* 130 F.3d at 560. He asserts that the foreman discriminated against him because of his race and national origin but provides no substantiation. Plaintiff points only to the unsupported, and insufficient, claim that defendant hired three persons of alleged Puerto Rican descent after failing to hire him. *N.Y. Racing Ass'n.,* 233 F.3d at 154 n. 1. But the large number of black workers on defendant's projects, as found by the state and federal agencies that rejected plaintiff's claim, weighs heavily against any inference of discrimination. And no evidence is proffered to indicate that other workers with similarly bad attendance records were treated differently.

Plaintiff fails to bear his burden of production, and summary judgment is granted on the Title VII discrimination claim.

### IV. *Age Discrimination*

**\*5** **[2]** The ADEA seeks, in relevant part, to "prohibit arbitrary age discrimination in employment." 29 U.S.C.S § 621(b). It requires a prima facie showing of discrimination similar to Title VII, but plaintiff must demonstrate membership in a protected *age* group. *Terry v. Ashcroft,* No. 00–6090, 2003 U.S.App. LEXIS 14511, at \*14 (2d. Cir. July 17, 2003). Plaintiff is more than 40 years old, and satisfies the first prong; he also satisfied the second and third, as discussed above. However, nothing in the presented circumstances supports an inference of age discrimination, as plaintiff himself explained in his deposition, "I don't know if anyone discriminated because my age, but in the seniority, I think they did." There is nothing to indicate that the workers hired were different in age from plaintiff, and the "elimination or derogation of seniority rights is not sufficient *by itself* to raise an inference of age discrimination in violation of the ADEA." *Ludovicy v. Dunkirk Radiator Corp.,* 922 F.2d 109, 111 (2d Cir.1990). Plaintiff fails to make a prima facie case and thus loses on summary judgment.

### V. *Disability Discrimination*

**[3]** The ADA prohibits discrimination based on an employee's disability. When considering discrimination claims under the ADA, courts in the Second Circuit apply the three-step burden-shifting analysis established in *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998). At the first stage, then, plaintiff bears the burden of establishing a prima facie case. In order to establish a prima facie case of discrimination under the ADA, plaintiff must show that (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job; and (4) she suffered some adverse employment action because of her disability. *Heyman v. Queens Village Comm. for Mental Health,* 198 F.3d 68, 72 (2d Cir.1999).

Plaintiff fails on the second and fourth prongs of his required prima facie demonstrations. Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.S. § 12102(2)(a). In this case, after his injury, plaintiff continued working; and when work with defendant dried up, he sought work elsewhere. Plaintiff

demonstrates no substantial limitation of any life activity. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). He fails on the fourth prong as well because he was terminated at the Empire site, along with other union employees, when the project was over. Plaintiff fails to make a prima facie case, and thus defendant succeeds on summary judgment with respect to the disability discrimination claim.

VI. *Retaliation*

**[4]** A retaliation claim requires a prima facie showing of (1) participation in a protected activity know to the defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). Plaintiff alleges that foreman Garcia retaliated against him by insulting his performance in response to plaintiff's "[going] over his head" in seeking a job at the East 61st Street site. Seeking a job from a supervisor after being rejected by a lower-ranked employee is not "directed at an unlawful employment practice," a requirement of a protected activity. *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999) (*quoting Silver v. KCA,* 586 F.2d 138, 141 (9th Cir.1978)). In seeking work, plaintiff was not looking to remedy discrimination; indeed, there is no indication he mentioned discrimination prior to his present claim. Plaintiff fails to make a prima facie case and loses on summary judgment.

**\*6** Summary judgment having been granted to defendant on all of plaintiff's claims, the Clerk of the Court is directed to mark this case as closed.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21756094

---

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.