# EXHIBIT 8

Case: 1:23-cv-07631 Document #: 29-9 Filed: 04/17/24 Page 2 of 5 PageID #:283

Trent v. D.T. Chicagoland Express, Inc., Not Reported in Fed. Supp. (2019)
2019 Fair Empl.Prac.Cas. (BNA) 42,648

2019 WL 498943
United States District Court, N.D. Illinois, Eastern Division.

Lonnie TRENT, Plaintiff,
v.
D.T. CHICAGOLAND EXPRESS, INC., an Illinois Corporation, d/b/a CXI Trucking, Defendant.

No. 18 C 5090
|
Signed 02/07/2019

**Attorneys and Law Firms**

Paul W. Ryan, Eugene K. Hollander, Jonathon Lamont Hoeven, Law Offices of Eugene K. Hollander, Chicago, IL, for Plaintiff.

Tami J. Diamond, Tomasz Koziol, Kurt E. Vragel, Jr., P.C., Glenview, IL, for Defendant.

### OPINION AND ORDER

SARA L. ELLIS, United States District Judge

*1 After Defendant D.T. Chicagoland Express, Inc., which does business as CXI Trucking ("CXI"), terminated Plaintiff Lonnie Trent's employment, he filed this employment discrimination case against CXI. Trent brings claims for race discrimination in violation of 42 U.S.C. § 1981 (count I); common law retaliatory discharge (count II); disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (counts III–V); and retaliation and interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (count VI). CXI moves to dismiss Trent's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds that Trent has sufficiently alleged the elements of his race discrimination, retaliatory discharge, and FMLA claims to provide CXI with notice of the basis of those claims, with CXI's arguments for dismissal more appropriate for a motion for summary judgment on a developed record. But because Trent has not sufficiently alleged his qualification for protection under the ADA, the Court dismisses the ADA claims.

### BACKGROUND[1]

Trent, who is African American, began working for CXI in August 2006, with his most recent position that of a spotter/driver. On September 17, 2016, Trent received a speeding violation while driving his personal vehicle and was placed on supervision. On December 8, 2016, Trent suffered a shoulder injury while working and sought worker's compensation benefits. CXI placed Trent on a medical leave of absence while Trent received care from a doctor. On January 17, 2017, Trent informed CXI that his doctor authorized him to return to work. Two days later, on January 19, CXI terminated Trent, claiming that he could not continue as a driver because of his speeding conviction. After learning of his termination, Trent spoke with CXI's general manager, Art Mroz, and its safety director, Ed Walsh. He inquired about a Caucasian driver, Mark Hager, who had received a DUI. Although the DUI rendered Hager ineligible to continue driving for CXI, CXI allowed Hager to continue working as a spotter. Trent asked Mroz and Walsh why CXI allowed Hager to continue working as a spotter after his DUI violation. Walsh told Mroz that he did not have to answer Trent's question.

### LEGAL STANDARD

*2 A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### ANALYSIS

Case: 1:23-cv-07631 Document #: 29-9 Filed: 04/17/24 Page 3 of 5 PageID #:284

Trent v. D.T. Chicagoland Express, Inc., Not Reported in Fed. Supp. (2019)
2019 Fair Empl.Prac.Cas. (BNA) 42,648

**I. Race Discrimination Claim (Count I)**
Trent initially claims that CXI terminated him because of his race in violation of 42 U.S.C. § 1981. To adequately allege this claim, Trent "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his race]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081, 1084–85 (7th Cir. 2008) ("A plaintiff alleging employment discrimination ... may allege these claims quite generally."). [2] CXI argues instead for a higher pleading standard, asking the Court to find that Trent cannot meet the *McDonnell Douglas* framework for proving discrimination through indirect evidence because he has not adequately alleged that he qualified for the position he held. In making this argument, CXI asks the Court to rely on evidence outside the complaint, but the Court cannot engage in such an analysis at the motion to dismiss stage. Moreover, Trent's complaint need not meet *McDonnell Douglas*' evidentiary standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L.Ed. 2d 1 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). All Trent must allege to proceed on his discrimination claim is that CXI terminated him on the basis of his race. *Tamayo*, 526 F.3d at 1084–85. While Trent's complaint is not a model of clarity, he has sufficiently done so, claiming that CXI terminated him on a pretextual basis because it did not terminate a Caucasian employee for a similar violation. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims."); *Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 954–55 (N.D. Ill. 2013) (finding the plaintiff sufficiently pleaded discrimination claims by alleging that employer treated coworkers not in her protected class more favorably). Therefore, the Court allows Trent to proceed with his race discrimination claim, with CXI able to raise its arguments again on a more developed record.

**II. Retaliatory Discharge Claim (Count II)**
 **\*3**  The tort of retaliatory discharge is a narrow exception to the general rule that at-will employees may be terminated for any or no reason. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374, 233 Ill. 2d 494, 331 Ill. Dec. 548 (2009). To state a claim for retaliatory discharge under Illinois law, Trent must allege that (1) CXI discharged him, (2) the discharge was in retaliation for his activities, and (3) the discharge violates a clear mandate of public policy. *Id*. Although Illinois courts have not provided a precise definition of "clearly mandated public policy," it typically "concerns what is right, just, and affects the citizenry of the State collectively." *McGrath v. CCC Info. Servs., Inc.*, 731 N.E.2d 384, 391, 314 Ill. App. 3d 431, 246 Ill. Dec. 856 (1991). "The public policy requirement is not met when 'only private interests are at stake.' " *Benders v. Bellows & Bellows*, 515 F.3d 757, 766 (7th Cir. 2008) (quoting *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879, 85 Ill. 2d 124, 52 Ill. Dec. 13 (1981) ). Common law retaliatory discharge claims generally arise when an employee is terminated for filing a worker's compensation claim or reporting illegal or improper conduct. *Mackie v. Vaughan Chapter-Paralyzed Veterans of Am., Inc.*, 820 N.E.2d 1042, 1044–45, 354 Ill. App. 3d 731, 289 Ill. Dec. 967 (2004). Here, Trent alleges CXI discharged him for pursuing worker's compensation benefits.

CXI argues that Trent's claim fails because it terminated him based on actions that began well before he suffered his shoulder injury. But CXI's argument again relies on facts not before the Court at this time. CXI does not raise any other issues with Trent's pleadings on this claim, and the Court finds that Trent has adequately alleged the required elements. While CXI may have a valid argument on summary judgment, at this point, Trent may proceed on his retaliatory discharge claim.

**III. ADA Discrimination Claims (Counts III-V)**
The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish his ADA claims, Trent will eventually be required to show: (1) he is disabled within the meaning of the ADA; (2) with or without reasonable accommodation, he is qualified to perform the essential functions of his job; and (3) he has suffered an adverse employment action because of his disability. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). The ADA defines a disability as (1) a "physical or mental impairment that substantially limits one or more major life activities," (2) a record of a disability, or (3) being regarded as having an impairment. 42 U.S.C. § 12102(1). "Merely having a physical injury or medical condition is not enough" to qualify as disabled under the ADA. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). And for CXI to have regarded Trent as having an impairment, the impairment cannot be transitory and minor, i.e. one "with an

Case: 1:23-cv-07631 Document #: 29-9 Filed: 04/17/24 Page 4 of 5 PageID #:285

Trent v. D.T. Chicagoland Express, Inc., Not Reported in Fed. Supp. (2019)
2019 Fair Empl.Prac.Cas. (BNA) 42,648

actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Trent's contradictory and vague allegations of disability do not suffice to allow the Court to find he had a disability that qualifies under the ADA or that CXI terminated him because of that disability. *See, e.g.*, *Gomez v. Dynamic Mfg., Inc.*, No. 12-cv-7396, 2013 WL 3270660, at *4 (N.D. Ill. June 27, 2013) (dismissing ADA claim where plaintiff did not sufficiently allege his broken leg substantially limited a major life activity and that his limitation was a permanent or long-term one); *Walton v. U.S. Steel, Corp.*, No. 2:10-CV-188-TLS, 2010 WL 3526263, at *3 (N.D. Ind. Sept. 2, 2010) (dismissing complaint when unclear allegations of disability did not suggest plausible claim). He only conclusorily alleges the legal definition of disability (in all three forms), while at the same time alleging that his doctor cleared him to return to work before CXI terminated him. Trent has not adequately alleged that his shoulder impairment or history of that impairment impacted major life activities, as required to qualify for ADA protection.[3] *See* *Haag v. Cook County Adult Probation*, No. 17 C 05403, 2018 WL 5249228, at *3 (N.D. Ill. Oct. 22, 2018) (dismissing ADA claim where plaintiff did not include any information in the complaint to suggest "whether or how [illnesses] substantially limit one or more of her major life activities"). Finally, his admission that his doctor cleared him to return to work a little over a month after he injured his shoulder defeats his claim that CXI regarded him as having an impairment. 42 U.S.C. § 12102(3)(B) (section does not apply to transitory impairments, those with an actual or expected duration of six months or less); *see also* *Gomez*, 2013 WL 3270660, at *4 (noting that plaintiff's allegations that his doctor cleared him for work undermine his allegations of a long-term or permanent impairment). Therefore, the Court dismisses Trent's ADA claims without prejudice.

### IV. FMLA Claim (Count VI)

*4 The FMLA entitles an employee to twelve weeks of leave per twelve-month period for a serious health condition that renders him unable to perform his job. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (citing 29 U.S.C. § 2612(a)(1)(D) ). An employer may not interfere with or deny an employee's exercise of his right to this leave. 29 U.S.C. § 2615(a)(1). To state an FMLA interference claim, Trent must allege that (1) he was eligible for FMLA protection, (2) the FMLA covers CXI, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take FMLA leave, and (5) CXI denied him FMLA benefits to which he was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). Trent appears to claim that CXI interfered with his FMLA rights by terminating him after he took a medical leave of absence. "Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights."[4] *Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009). With respect to FMLA retaliation, Trent must allege (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two. *See* *Hemenway v. Rock County*, No. 18-cv-307-jdp, 2018 WL 6050906, at *5–6 (W.D. Wis. Nov. 19, 2018) (noting that, while FMLA retaliation claim should be treated under § 2615(a)(2), the standard retaliation analysis applies to determine whether plaintiff stated a claim).

While somewhat unclear from the complaint whether CXI treated his medical leave as leave under the FMLA, drawing all inferences in Trent's favor, Trent has adequately alleged he engaged in protected activity by taking FMLA leave and that CXI terminated him two days after his doctor cleared him to return to work because of that medical leave. CXI argues that Trent did not suffer from a condition entitling him to FMLA leave, but Trent has pleaded he had a shoulder injury that required medical care, which he received until his doctor cleared him to return to work. This sufficiently suggests he suffered from a serious health condition that made him unable to perform his job. *See* 29 U.S.C. § 2611 (defining "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider"); 29 C.F.R. § 825.115 (defining what constitutes a serious health condition with respect to continuing treatment for purposes of FMLA leave). And while Trent may not have specifically requested FMLA leave, an issue the Court cannot determine from the complaint, "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 953 (7th Cir. 2004). Trent's allegations suffice: CXI knew of Trent's shoulder injury, his inability to work because of the injury, and his placement under a doctor's care. Although the facts may prove otherwise, at this stage, the Court cannot consider CXI's attempts to introduce evidence outside the complaint and so allows Trent to proceed on his FMLA claim.

Case: 1:23-cv-07631 Document #: 29-9 Filed: 04/17/24 Page 5 of 5 PageID #:286

Trent v. D.T. Chicagoland Express, Inc., Not Reported in Fed. Supp. (2019)
2019 Fair Empl.Prac.Cas. (BNA) 42,648

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part CXI's motion to dismiss [15]. The Court dismisses Trent's ADA claims (counts III-V) without prejudice.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 498943, 2019 Fair Empl.Prac.Cas. (BNA) 42,648

## Footnotes

1     The facts in the background section are taken from Trent's complaint and the exhibits attached thereto and are presumed true for the purpose of resolving CXI's motion to dismiss. See Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011); Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp., 495 F.3d 779, 782 (7th Cir. 2007). CXI attached two affidavits, with accompanying exhibits, to its motion to dismiss. The Court indicated to the parties that it would not convert CXI's motion to one for summary judgment and so would not consider anything outside the complaint. Doc. 18. The affidavit and documents are not referenced in Trent's complaint or central to his claims. See Hecker v. Deere & Co., 556 F.3d 575, 582–83 (7th Cir. 2009) (documents attached to a motion to dismiss may only be considered if referenced in the complaint and central to plaintiff's claims). Therefore, the Court does not consider the affidavits and exhibits attached to CXI's motion.

2     Although *Tamayo* addresses a Title VII claim, courts have applied this minimal pleading standard to § 1981 claims as well. See, e.g., Little v. Ill. Dep't of Revenue, No. 10 C 4928, 2011 WL 3021729, at *1 (N.D. Ill. July 21, 2011); see also Lalvani v. Cook County, Ill., 269 F.3d 785, 789 (7th Cir. 2001) (noting that courts apply the same standard to evaluate Title VII and § 1981 claims).

3     In his response, Trent suggests that the fact that he was on medical leave and under a doctor's care establishes that his injury substantially limited one or more major life activities, but he does not provide any indication of which major life activities his injury impacted.

4     Some courts have treated a retaliation claim such as that asserted by Trent under 29 U.S.C. § 2615(a)(2) or (b). But these sections apply only to retaliation or discrimination for "opposing any practice" made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). "Opposition includes things such as filing grievances or making statements against unlawful conduct." Arrigo v. Link Stop, Inc., 975 F. Supp. 2d 976, 985 (W.D. Wis. 2013). Trent does not allege he opposed any unlawful conduct, and so the Court analyzes his claim under § 2615(a)(1).

---

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.