# EXHIBIT 9

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 2 of 12 PageID #:288

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

2018 WL 1603872
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Stephanie HARVIN, Plaintiff,
v.
MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Defendant.

14-CV-5125 (CBA) (RER)
|
Signed 03/30/2018

**Attorneys and Law Firms**

Stephanie Harvin, Brooklyn, NY, pro se.

Mariel A. Tanne, Ricardo Tapia, New York City Transit Authority, Brooklyn, NY, for Defendant.

## MEMORANDUM & ORDER

Carol Bagley Amon, United States District Judge

*1 Stephanie Harvin, proceeding pro se, brings this employment discrimination action against her former employer the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), alleging violations of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

MaBSTOA moved to dismiss the ADA claim for failure to state a claim and to dismiss the remaining claims for lack of subject matter jurisdiction. The Court referred the motion to the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, for report and recommendation ("R&R"). (See D.E. dated June 16, 2015.) Magistrate Judge Reyes's R&R recommended MaBSTOA's motion be granted, (see D.E. # 32 ("R&R")), and Harvin filed timely objections on a number of grounds. For the following reasons, the Court adopts Magistrate Judge Reyes's recommendation to dismiss all claims.

The Court assumes familiarity with the factual and procedural history of this case as set forth in the R&R and summarizes them only as necessary to resolve Harvin's objections.

Harvin was an employee of MaBSTOA from 1988 to 2013. (D.E. # 25-3 ("NYSDHR Compl.") at 1.) Her claims are related to the time period beginning in September 2010, when she was transferred to the payroll department, and continue through August 2013, when she retired. (D.E. # 1 ("Compl.") at 3.) [1]

Harvin suffers from rheumatoid arthritis, fibromyalgia, bilateral carpel tunnel syndrome, and a herniated disk. (Id.) According to Harvin, she has "consistently been on FMLA since 2003" for her rheumatoid arthritis and fibromyalgia. (Id. at 5.) Harvin alleges she requested a number of accommodations as a result of those disabilities and that those requests were ignored. (Id.) In particular, she requested a transfer, a reduced workload, and help checking off the payroll books. (Id.) Despite the alleged lack of accommodation, Harvin states that she was able to "stay on top of [her] work" and that she "did more work than anyone else on the payroll staff." (Id. at 6.) Harvin also claims she was discriminated against based on her disability. Specifically, she states that she was passed over for a number of promotions, received fewer overtime opportunities, received an unfair workload, was not given the proper information and training to perform her job, was forced to work on a broken computer for a period of time, and had limited access to superiors outside of her immediate boss. (Id. at 5–10; D.E. # 14 ("Am. Compl.") at 1–2.) Finally, Harvin makes retaliation and hostile work environment claims based on allegations that she was ignored, harassed, intimidated, verbally abused, and disrespected, both before and after complaining about her mistreatment. (Am. Compl. at 1–2.)

*2 Harvin filed a complaint with the New York State Division of Human Rights ("NYSDHR") in October 2013, which was dismissed in April 2014, and thereafter initiated this suit in August 2014. (D.E. # 25-5 ("NYSDHR Dismissal") at 1–3; Compl. at 1.) On March 3, 2016, Magistrate Judge Reyes issued an R&R recommending that MaBSTOA's motion to dismiss be granted, (see R&R at 1), to which Harvin filed timely objections, (see D.E. # 36 ("R&R Obj.")).

## BACKGROUND

## STANDARD OF REVIEW

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 3 of 12 PageID #:289

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

When deciding whether to adopt an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the R&R "to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund. L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (quoting Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, "[t]he clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments." Dafeng Hengwei Textile Co. v. Aceco Indus., 54 F. Supp. 3d 279, 280-83 (E.D.N.Y. 2014).

Harvin's objections largely reiterate her original arguments. Nonetheless, because Harvin is proceeding pro se, the Court will construe her objections "liberally and 'interpret them to raise the strongest arguments that they suggest.' " Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Even liberally construed, not all of Harvin's responses constitute proper objections; but, in an abundance of caution, the Court will review the R&R de novo where the basis for any objection is discernable.

**DISCUSSION**

Harvin's response could be plausibly construed to make specific objections to six of the R&R's recommendations. These are: (1) the election of remedies bar to the state-law claims; (2) the statutory time bar to her federal claims; (3) the rejection of her failure-to-accommodate and denial-of-promotion claims; (4) the rejection of her claims related to training and resources; (5) the rejection of her overtime claims; and (6) the rejection of her claims of verbal abuse and disrespect amounting to discrimination, retaliation, and hostile work environment. (See R&R Obj.) The Court will examine each of these arguments in turn.

**I. Election of Remedies**

Magistrate Judge Reyes recommended that Harvin's claims under NYSHRL and NYCHRL be dismissed for lack of subject matter jurisdiction based on Harvin's prior election of remedies. (R&R at 4–6.) Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim over which the Court lacks subject matter jurisdiction. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Harvin's objection states that her lawsuit was filed under federal law and that she was provided a "Notice of Right to Sue" from the Equal Employment Opportunity Commission ("EEOC"). (R&R Obj. at 2.) The NYSHRL allows for a plaintiff to choose her remedies: "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ... unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9). The same limitation appears in the NYCHRL. See N.Y.C. Admin. Code § 8-502(a). "Thus, by the terms of the statute and code, respectively, the NYHRL and [NY]CHRL claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 124–27 (2d Cir. 2002).

*3 The NYSHRL provides exceptions to this limitation "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled," in which case "such person shall maintain all rights to bring suit as if no complaint had been filed with the division." N.Y. Exec. Law § 297(9); see also N.Y.C. Admin, Code § 8-502(b) (setting forth a nearly identical set of exceptions for NYCHRL).

Harvin's complaint to the NYSDHR was dismissed because the agency found the evidence did not provide probable cause to support Harvin's claims. (NYSDHR Dismissal at 1–3.) A determination based on insufficient evidence does not fall within any of the exceptions provided by the statutes. A plaintiff cannot bypass this jurisdictional bar by altering the claim so that "the facts alleged in the legal action differ from those brought before the NYDHR[,] [s]o long as 'substantially the same facts are involved[.']" Deberry v. Brookdale Univ. Hosp. & Med. Ctr., 11 F. Supp. 3d 387, 392 (E.D.N.Y. 2014) (quoting Benjamin v. N.Y.C. Dep't of Health, 851 N.Y.S.2d 68 (Sup. Ct. Oct. 23, 2007), aff'd, 870 N.Y.S.2d 290 (1st Dep't 2008)); see also Higgins v. NYP Holds., Inc., 836 F. Supp. 2d 182, 189 (S.D.N.Y. 2011) (barring jurisdiction when plaintiff made altered claims "based on the same operative events he presented to the [NY]SDHR").

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 4 of 12 PageID #:290

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

The discriminatory acts that Harvin alleges in this case are the same acts alleged in her NYSDHR complaint. These acts include harassment, intimidation, denial of training, denial of promotion, unequal work assignments, failure to accommodate, hostile work environment, inadequate resources, and retaliation. The principal difference between Harvin's federal complaint and her NYSDHR complaint is her newly added allegations of discrimination based on rheumatoid arthritis, fibromyalgia, and herniated disk. However, these additions are based on the "same operative events" as Harvin's NYSDHR complaint. Higgins, 836 F. Supp. 2d at 189. Specifically, the denial of promotions, overtime and transfer, the verbal abuse, the broken computer, and the uneven workload comprised the core of both the complaint to the NYSDHR and the complaint filed with this Court. Because "substantially the same facts are involved" here, the Court agrees with Magistrate Judge Reyes' determination that the Harvin's prior election of remedies acts as a jurisdictional bar to Harvin's NYSHRL and NYCHRL claims. Deberry, 11 F. Supp. 2d at 392. [2]

**II. Statute of Limitations**

Plaintiffs in New York must file ADA claims with the EEOC within 300 days of the alleged unlawful employment practice. Cherry v. City of N.Y., 381 Fed.Appx. 57, 58 (2d Cir. 2010) (finding the same 300-day statute of limitations applied to ADA and Title VII claims by a New York plaintiff). Harvin filed her complaint with the NYSDHR on October 11, 2013, and cross-filed the claim with the EEOC. (NYSDHR Compl. at 1.) Magistrate Judge Reyes accordingly recommended that all of Harvin's claims arising out of events occurring more than 300 days before this filing date (that is, before December 15, 2012) are statutorily time-barred. (R&R at 6.) The R&R further found that each of Harvin's allegations represent discrete events and thus do not constitute a continuing violation. (Id. at 6–7.) Magistrate Judge Reyes accordingly recommended considering events prior to December 15, 2012 only as support for Harvin's claim that a hostile work environment existed within the statutory period. (Id. at 7.) Although it is not entirely clear, Harvin may be objecting on the grounds that the violations she suffered were ongoing. (R&R Obj. at 2.)

**\*4** The statute of limitations may be overcome when the employment actions amount to a continuing violation. See Lugo v. City of N.Y., 518 Fed.Appx. 28, 29 (2d Cir. 2013) (allowing "claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination" as long as one act occurs within the statutory timeframe). However, the continuing-violation doctrine does not apply to discrete acts of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' "). "It is well-settled that certain adverse employment practices such as termination, failure to promote or adequately compensate, undesirable work transfers, and denial of preferred job assignments are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination." Robles v. Cox & Co., 841 F. Supp. 2d 615, 628 (E.D.N.Y. 2012). For a hostile work environment claim, however, untimely allegations of discrimination may be considered in determining whether a hostile work environment existed within the statutory period. See Morgan, 536 U.S. at 117 (holding the collection of acts that comprise a hostile work environment claim may be considered as long as one act occurs within the statutory timeframe).

With the exception of the hostile work environment claim, Harvin's allegations of discriminatory conduct—involving denials of overtime, promotions, transfers, training, and resources—are all of the type that have been considered to be discrete events in this circuit and will not be treated as continuing violations here. See Morgan, 536 U.S. at 117; see also, e.g., Thompson v. Brookdale Univ. Hosp. & Med. Ctr., No. 14-CV-5317 (WFK), 2015 WL 7738018, at \*4 (E.D.N.Y Dec. 1, 2015); Thomson v. Odyssey House, No. 14-CV-3857 (MKB), 2015 WL 5561209, at \*9 (E.D.N.Y. Sept. 21, 2015); Bright v. Coca Cola Refreshments USA, Inc., No. 12-CV-234 (BMC), 2014 WL 5587349, at \*4 (E.D.N.Y. Nov. 3, 2014); Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014).

Assuming that the MaBSTOA jobs Harvin references were filled no later than one year after the "Last Date for Filing" listed on the job-vacancy notices, there are a total of nine positions for which Harvin alleges she unsuccessfully applied that are either potentially timely, or which lack a date listing, (see Am. Compl. at 15, 17, 21-27); see also Dawson v. N.Y.C. Transit Auth., 624 Fed.Appx. 763, 768 (2d Cir. 2015) (holding that the date the position was filled is the appropriate date for the continuing violation analysis). An additional posting dating back to 2008 does not list a last date for filing, but, based on the normal one-month lag between the posting date and the last date for filing, the Court finds this posting time-barred. (Am. Compl. at 8.) Of the nine

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 5 of 12 PageID #:291

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

positions still potentially timely, three are for the position of Staff Analyst, one for Assistant General Superintendent, two for Superintendent of Traffic Checking Operations, one for Confidential Secretary, one for General Superintendent of Traffic Checking Operations, and one for Director of Picks and Work Assignments. [3] (Id. at 15, 17, 21–27.)

Harvin's claim that she was denied reassignment to her prior position in March 2012 is barred because it is outside the statutory timeframe. (Compl. at 12.) In addition, Harvin alleges that, starting when she was transferred to payroll in 2010, she was subjected to overtime restrictions and a heavy workload. (Id. at 6.) She does not allege that any material change in the terms and conditions of her employment occurred thereafter. (Id.); see also Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 344 (E.D.N.Y. 2014) ("A plaintiff suffers an 'adverse employment action' under the ADA when 'he or she endures a materially adverse change in the terms and conditions of employment.' " (internal quotation marks omitted) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000))); Feingold v. New York, 366 F.3d 138, 153 (2d Cir. 2004) (finding that being subjected to an excessive workload can rise to an inference of discrimination). The fact that Harvin continued to experience the impact of the increased workload through the 300-day period does not render the discrete act of increasing her workload in 2010 a continuing violation. Cf. Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 135 (2d Cir. 2003) (finding that the rejection of an employee's request for an accommodation, though it continued to impact the employee on a weekly basis, was not a continuing violation because the employer took only a single discrete act and thereafter "took no further action concerning" the plaintiff's requested accommodation); MacDonnell v. Liberty Cent. Sch. Dist., 115 Fed.Appx. 489, 491 (2d Cir. 2004) (applying the reasoning from Elmenayer to an untimely "change in job responsibilities" that resulted in an increased workload). Because the materially adverse employment action took place at the time of transfer, a discrete event occurring before the statutory period, Harvin's claim premised on that event and on her resulting increased workload is time-barred.

*5 Despite Harvin's argument that MaBSTOA's continued failure to accommodate her disabilities amounted to "ongoing" discrimination against her, repeated rejections of a plaintiff's proposed accommodations are each discrete acts that "do[ ] not give rise to a continuing violation." See Gomez v. N.Y.C. Police Dep't, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (quoting Elmenayer, 318 F.3d at 135, and collecting cases). Therefore, only those requests for accommodations that occurred after December 15, 2012 are timely.

### III. ADA Claim—Failure to Accommodate

Magistrate Judge Reyes recommended that Harvin's timely claims for failure to accommodate her disabilities should nevertheless be dismissed, because Harvin concedes that she was able to perform the essential functions of her job without accommodation by her employer. (R&R at 8–9.) Harvin objects by reasserting that her supervisors ignored her requests for accommodations and never asked her if she needed any accommodations. She claims she was "left to provide accommodation for [her]self." (R&R Obj. at 3.)

The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To make a prima facie failure-to-accommodate claim, a plaintiff must show that: "(1) he is disabled within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations." Price v. City of N.Y., 797 F. Supp. 2d 219, 229 (E.D.N.Y. 2011) (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)).

The third element is in question here. Harvin has claimed that, despite the lack of accommodations, she was able to perform her job well. (Compl. at 6.) Based on this admission, Magistrate Judge Reyes recommended that the Court find that Harvin could not carry her burden to show "that with reasonable accommodations she could perform the essential functions of the position sought," Feeley v. N.Y.C. Police Dep't, No. 97-CV-02891 (RJD), 2001 WL 34835239, at *9 (E.D.N.Y. Sept. 4, 2001), because she plainly could perform the essential functions even *without* an accommodation, (R&R at 8–9; see also Am. Compl. at 3 ("I was performing the essential functions of my job, without any accommodations.")). Numerous courts in this Circuit have found that plaintiffs do not state a claim for a failure to reasonably accommodate where their own allegations attest that no accommodation was needed in order for them to perform their essential work functions. See, e.g., Anderson v. Nat'l Grid. PLC, 93 F. Supp. 3d 120, 139 (E.D.N.Y. 2015) (granting summary judgment in favor of the defendant where

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 6 of 12 PageID #:292

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

"there [wa]s insufficient evidence from which a rational factfinder could conclude that plaintiff needed a reasonable accommodation to perform the essential functions of his job"); Ebanks v. St. Christopher-Ottilie, No. 98-CV-4777 (JG), 2000 WL 1364357, at *9 (E.D.N.Y. Sept. 5, 2000) (same where the court determined that the plaintiff "did not need a 'reasonable accommodation' in order to perform his job," because the plaintiff "repeatedly assert[ed] that he was able to perform all of the duties of [his] position"); Azrelvant v. B. Manischewitz Co., No. 98-CV-2502 (ILG), 2000 WL 264345, at *8 (E.D.N.Y. Jan. 13, 2000) (same where the "sworn testimony ... le[ft] no doubt that the accommodations requested are not necessary to permit plaintiffs to perform the essential functions of their positions"); Micari v. Trans World Airlines. Inc., 43 F. Supp. 2d 275, 283 (E.D.N.Y.) (same where "the fact that [plaintiff] returned to work ... and, by his own admission, performed regular work for several months, drives this Court to conclude that he did not need a 'reasonable accommodation' in order to work"), aff'd, 205 F.3d 1323 (2d Cir. 1999).

**\*6** In her objections, Harvin argues that no one at MaBSTOA ever inquired about whether she needed additional equipment or other accommodations to allow her to "get [her] job done, in the least painful way." (R&R Obj. at 3.) However, in light of her admission that she was already performing the essential functions of her job, no such accommodations would have been required. "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position....' " Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). The touchstone of the ADA's reasonable accommodation requirement is "effectiveness" and it follows that where an employee is already able to effectively perform the essential functions of the position without any accommodations by the employer, additional efforts that might make it easier or more convenient for the employee to perform those functions are not required. Id. ("[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee."); cf. Temple v. Hudson View Owners Corp., No. 16-CV-3203 (CS), 2016 WL 6993846, at *4 (S.D.N.Y. Nov. 28, 2016) ("While having only one parking space may be less convenient for Plaintiffs, the law does not require defendants to provide the best possible accommodation.").

In any event, the three accommodations that Harvin alleges she requested—to be transferred back to her prior job, a lighter workload or changed assignment, and help checking off the payroll books, (Compl. at 5; D.E. # 28 ("Opp. Mem.") at 1)—are not viable. Harvin made her request for a transfer back to her old job on March 28, 2012, (D.E. # 28-1 at 6), which is before the December 15, 2012 cut-off discussed above and so is time-barred. See, e.g., Howard v. United Parcel Serv., Inc., 101 F. Supp. 3d 343, 353 (S.D.N.Y. 2015), aff'd sub nom., Howard v. United Parcel Serv., 648 Fed.Appx. 38 (2d Cir. 2016).

Her request for a reduced workload—by giving more work to her co-workers or having another employee come into work, (Compl. at 5)—was not a request for a *reasonable* accommodation. See, e.g., Hunt-Watts v. Nassau Health Care Corp., 43 F. Supp. 3d 119, 134 (E.D.N.Y. 2014) ("Plaintiff's proposed accommodation is also not reasonable because it amounts to having other employees do her job for her."); Desmond v. Yale-New Haven Hosp., Inc., 738 F. Supp. 2d 331, 348 (D. Conn. 2010) (stating that "an employer 'is not required to reallocate essential functions,' " meaning the " 'fundamental' duties to be performed in the position in question" (quoting 29 C.F.R. pt. 1630, app. § 1630.2(o)), and Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)). Here, Harvin's request that other employees in her department take on some of her payroll work—which is undisputedly the essential function of a payroll clerk—was not a request for a reasonable accommodation. Regardless, Harvin admits that the workload was in fact redistributed at the direction of Amy Ramirez on July 20, 2013. (R&R Obj. at 3.) Harvin therefore cannot show the fourth element of the prima facie case because the employer did not refuse to make the requested accommodation. To the extent that Harvin could be construed to allege that, in light of her condition and complaints, she should have been awarded one of the promotions that she applied for, (see, e.g., Am. Compl. at 1–2; Opp. Mem. at 1), the ADA does not require granting a promotion as a form of accommodation, see Pender, 2006 WL 2013863, at *8 (collecting cases).

Finally, Harvin has not plausibly alleged that MaBSTOA refused her request that she receive help checking off the payroll lists. Harvin raised the issue on June 14, 2013 and a meeting was held on June 20, 2013, during which the issue was discussed. (D.E. # 28-2 at 5.) Harvin appears to have requested a transfer to another department as an accommodation. (See id.) Although MaBSTOA did not grant that exact accommodation, it did re-distribute Harvin's workload the following month. (R&R Obj. at 3.) Harvin cannot state a failure to accommodate claim based merely

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 7 of 12 PageID #:293

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

on her employers' failure to grant her the accommodation of her choice. Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002). [4]

### IV. Adverse Employment Action—Denial of Promotion

**\*7** "Claims alleging discrimination under the ADA are subject to the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). Under this framework, the plaintiff "bears the burden of establishing a prima facie case of discrimination by showing '(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.' " Tolbert v. Smith, 790 F.3d 427, 435 (2d Cir. 2015) (quoting Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012)).

Magistrate Judge Reyes recommended that Harvin's discrimination claims based on the denial of promotions be dismissed. The R&R found that Harvin had not adequately pleaded that she was qualified for the positions she sought because the positions that she applied for within the limitations period required baccalaureate degrees (which Harvin concededly lacks) and because Harvin failed to otherwise provide sufficient details regarding her qualifications. (R&R at 11.) Harvin objects by asserting that she was, in fact, qualified for the positions she sought. (R&R Obj. at 3–4.) She suggests that work in the field was an alternative qualification for these positions and lists a number of individuals who had field experience and received promotions. (Id.)

Harvin provided the job vacancy notices for each of the promotions she claims she was denied because of her disability. (Am. Compl. at 15, 17, 21–27.) Harvin does not have a baccalaureate degree, (id. at 28), which is a requirement for all but one of the positions that she was denied.[5] That position is Confidential Secretary,[6] which required a high school diploma and three years of satisfactory full-time experience in secretarial duties. (Id. at 22.) Harvin does not plead that she has any full-time experience in secretarial duties, her previous work experience being in scheduling and payroll. (See Compl.; Am. Compl.) Although the positions of Director of Picks and Work Assignments, Superintendent of Traffic Checking Operations, and General Superintendent of Traffic Checking Operations permit consideration of candidates with "a satisfactory equivalent of education and experience" or a "satisfactory equivalent" to a baccalaureate degree, (Am. Compl. at 21, 23–24, 26), Harvin has not alleged that she has the equivalent education or experience required to be qualified for these positions, (see Compl.; Am. Compl.).

Further, Harvin has failed to raise even a minimal inference of discriminatory intent surrounding any of her denied promotion applications. She has made no allegations of discrimination based on her disabilities. An inference of discriminatory intent can be raised by showing another individual "similarly situated in all other material respects" received more favorable treatment. Gaymon v. MTA Bus Co., No. 12-CV-4830 (RRM), 2015 WL 1014067, at \*4 (E.D.N.Y. Mar. 6, 2015). Although she does list others who she purports were promoted, (R&R Obj. at 4), Harvin has not made any assertion that these individuals were similarly situated to support an inference of discrimination. For instance, she does not sufficiently detail their education or work experience. Because Harvin fails to plead that she was qualified for the positions she sought or to raise any inference of discriminatory intent, her denial-of-promotion claims are dismissed.

### V. Training and Resources

**\*8** Harvin objects to Magistrate Judge Reyes's recommendation that the Court dismiss Harvin's claims concerning her exclusion from training and other resources by reiterating her claims that she was left out of important trainings, that information was withheld from her, and that she was forced to work on a poorly functioning computer for an extended period of time.

As noted above, in order to make a prima facie case, Harvin must show, among other things, that she suffered an adverse employment action and that the action occurred under circumstances giving rise to discriminatory intent. "To qualify as an adverse employment action, the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment. It must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Davis, 804 F.3d at 235.

Harvin's claims in this case do not rise above the threshold of an inconvenience. Harvin asserts she was able to perform her job well despite the circumstances she considers disparate treatment. (Compl. at 6.) She does not allege that the

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 8 of 12 PageID #:294

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

MaBSTOA's failure to provide her with adequate training, information, or resources impacted the terms and conditions of her employment, and she admits that she was never demoted or terminated within the limitations period, (R&R Obj. at 4).[7] See Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003))).

### VI. Overtime Allocation

Harvin objects to Magistrate Judge Reyes's recommendation that the Court dismiss her claim that she was discriminated against in the allocation of overtime because she fails to raise an inference of discriminatory intent. Harvin counters that she had to justify her requests for overtime, while other employees were not required to do so. She offers as a specific example that "Ms. Amerson was able to double her salary with overtime." (R&R Obj. at 5.)

Courts have held that in order to state a claim for discrimination under the ADA, a plaintiff must plead a "connection between a disability and [the] adverse employment action" complained of. Jackson v. Elmhurst Hosp. Ctr., No. 10-CV-5248 (RRM), 2012 WL 868965, at *6 (E.D.N.Y. Mar. 14, 2012). Alternatively, a plaintiff may raise an inference of discrimination by showing that similarly situated employees not in their protected class were treated better. Pierce v. Fordham Univ., Inc., No. 15-CV-4589 (JMF), 2016 WL 3093994, at *4 (S.D.N.Y. June 1, 2016) (citing Mandell v. Cty. Of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)), aff'd, 692 Fed.Appx. 644 (2d Cir. 2017).

Nothing in Harvin's pleadings suggests that her employer's decision to limit her overtime opportunities to Saturdays was in any way based on her disability. Indeed, the allegations appear to reflect Harvin's supervisors' personal disdain for her, which, although unfortunate, does not appear related to her disability. See, e.g., Doe v. Torrington Bd. of Educ., 179 F. Supp. 3d 179, 196 (D. Conn. 2016) (dismissing discrimination claim where plaintiff "does not sufficiently allege, however, that anyone actually harassed, bullied, or assaulted him *because of his* disability or perceived disability, rather than some other reason, such as personal animus" (emphasis in original)), reconsideration granted in part, No. 15-CV-00452 (MPS), 2016 WL 6821061 (D. Conn. Nov. 17, 2016). Harvin confirms this view by her complaint that "none of incidents had anything to do with my work, which made them personal attacks." (R&R Obj. at 5.) Neither does Harvin's presentation of Ms. Amerson as a comparator give rise to an inference of discriminatory intent because Harvin offers nothing in her pleading to suggest that she and Amerson were, in fact, similarly situated.[8]

### VII. Harassment, Verbal Abuse, Intimidation, Disrespect

*9 Harvin's final objection is to the R&R's recommendation that Harvin's claims of discrimination, retaliation, and hostile work environment be dismissed because Harvin's allegations of harassment, verbal abuse, intimidation, and disrespect failed to raise an inference of discrimination, were not materially adverse, and were insufficiently severe or pervasive. (R&R 13–15.) Harvin objects by reiterating that the conduct she faced was "definitely severe, persistent, and did have a material impact on [her]." (R&R Obj. at 5.) She further objects to the recommendation of dismissal of her retaliation claim by recounting the elements of a retaliation claim. (Id. at 6.)

#### A. Discrimination

In order to make a prima facie employment discrimination claim, a plaintiff must plead, among other factors, that she suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent. Tolbert, 790 F.3d at 435. An adverse employment action for the purpose of a discrimination claim must be a "materially adverse change in the terms and conditions of employment," often a change in compensation, title, or responsibilities. Joseph, 465 F.3d at 90.

Harvin claims she has "been harassed, been verbally abused, intimidated and disrespected on a consistent basis since September, 2010." (Compl. at 5.) As such, she has not pleaded any change in the conditions of her employment within the statutory time period to serve as the basis for her discrimination claim. Nor has she shown that this conduct, however unpleasant, had any effect on the material terms of her employment. Her response that the conduct had "a material impact" on her is not relevant to the discrimination inquiry. (R&R Obj. at 5.) Moreover, as noted above, Harvin

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 9 of 12 PageID #:295

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

fails to connect her alleged mistreatment to discrimination based on her disability.

### B. Retaliation

"To make out a prima facie case of retaliation, a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.' " Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)). Regarding the third prong, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 440 (E.D.N.Y. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience," because such "simple lack of good manners will not create such deterrence." Burlington, 548 U.S. at 68.

Harvin's EEOC and other internal complaints suffice as protected activity. As noted above, however, Harvin has failed to link any of her alleged mistreatment—which she asserts began in September 2010, before her complaints—to her protected activity. Moreover, her allegations of harassment fail as a matter of law to constitute a materially adverse action, because the verbal abuse and disrespect Harvin alleges, (see Am. Compl. at 2), appear to be, at most, the kind of "personality conflicts at work" and "snubbing" that courts have found to be "not actionable." Burlington, 548 U.S. at 68 (quoting 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996)); see also Scott v. City of N.Y. Dep't of Corr., 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) ("[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because '[n]egative or otherwise insulting statements are hardly even actions, let alone "adverse actions." ' " (second brackets in original) (quoting Blake v. Potter, No. 03-CV-7733 (LAP), 2007 WL 2815637, at *8 (S.D.N.Y. Sept. 25, 2007))), aff'd sub nom., Scott v. N.Y.C. Dep't of Corr., 445 Fed.Appx. 389 (2d Cir. 2011); Sangan v. Yale Univ., No. 06-CV-587 (PCD), 2008 WL 350626, at *4 (D. Conn. Feb. 7, 2008) (finding conduct "which could be found to be offensive, discourteous, demeaning, and/or belittling" does not constitute an adverse employment action for the purposes of a retaliation claim).

### C. Hostile Work Environment

**\*10** While this circuit has not yet recognized an ADA hostile work environment claim, it appears that such a claim is cognizable, see Preston v. Bristol Hosp., 645 Fed.Appx. 17, 20 n.3 (2d Cir. 2016), and courts in this district have recognized this type of claim and applied the Title VII standard, see, e.g., Locorriere v. NBTY, Inc., No. 13-CV-7277 (JFB), 2016 WL 625618, at *11 (E.D.N.Y. Feb. 17, 2016); Hong Yin v. N. Shore LIJ Health Svs., 20 F. Supp. 3d 359, 370 (E.D.N.Y. 2014).

Like Title VII, the ADA does not protect against the indignities that most employees face and "does not set forth 'a general civility code for the American workplace.' " Burlington, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Rather, to make out a hostile work environment claim, a workplace must be "permeated with discriminatory intimidation, ridicule and insult that is so severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Littlejohn v. City of N.Y., 795 F.3d 297, at 320–21 (2d Cir. 2015) (citing Harris v. Forklift Svs. Inc., 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Id. (quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014)). Moreover, a plaintiff must show that the allegedly hostile incidents occurred under circumstances raising at least an inference that they were motivated by a purpose to discriminate against plaintiff's disability. See, e.g., Carter v. Verizon, No. 13-CV-7579 (KPF), 2015 WL 247344, at *9 (S.D.N.Y. Jan. 20, 2015). Although facially neutral incidents may be included, of course, among the "totality of the circumstances" that courts consider in any hostile work environment case, a plaintiff nevertheless must offer some allegations linking these facially neutral incidents to discrimination based on the plaintiff's disability. Cf. Locorriere, 2016 WL 625618, at *11 (quoting Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002)).

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 10 of 12 PageID #:296

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

Harvin bases her hostile work environment claims on a series of incidents over the three-year course of her employment in the payroll group, many of which she relies upon for her discrimination and failure-to-accommodate claims. She alleges a consistent stream of abuse from September 2010 to the end of her employment, a heavier workload, lack of access to training and resources, and unfair character attacks. (See Compl.; Am. Compl.) Harvin catalogues a number of these incidents in her complaints and, although many of them are time-barred, the Court considers them as a background for her complaint regarding those incidents that are not time-barred. Her non—time-barred allegations include that a supervisor critiqued Harvin for her body language during a January 2013 meeting, that she was reprimanded or mocked for booking a cruise a year in advance during an April 2013 meeting, and that she was the target of an allegedly mocking comment about using a bingo marker to make the check marks. (See Compl. at 13–15.) Even viewed in the most favorable light, however, these incidents do not adequately form the basis for a conclusion that the workplace was "permeated with discriminatory intimidation" or was "severe or pervasive [enough] to [create] an abusive working environment." Littlejohn, 795 F.3d at 320–21; see also Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 679–80 (S.D.N.Y. 2011) (finding no hostile work environment where plaintiff alleged she was subjected to false negative disciplines relating to her job performance, was ignored in meetings, had her accent mocked, and had her manner of speech criticized); Payton v. City Univ. of N.Y., 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct that is 'merely offensive, unprofessional, or childish' cannot support a hostile work environment claim." (quoting Hawkins v. City of N.Y., No. 99-CV-11704 (RWS), 2005 WL 1861855, at *15 (S.D.N.Y. Aug. 4, 2005))).

*11 Likewise, as the Court noted with regard to her other claims, Harvin has failed to plausibly allege that the incidents were motivated by discrimination against her disability. Nothing on the face of the incidents regarding the cruise or Harvin's body language have anything to do with Harvin's disability. Although taken in the light most favorable to Harvin, the remark about the bingo marker made light of her disability, the comment was made by the director of Labor Relations, not one of Harvin's supervisors who she alleges were responsible for the majority of the incidents, and so cannot be used to recast the other statements as discriminating against her disability. See, e.g., Bright, 2014 WL 5587349, at *9 ("The timely incidents are not sufficiently related to the untimely incidents to constitute part of the same continuing hostile work environment [because] they all involved different perpetrators and qualitatively different incidents, spread out over a number of years."); see also Dziedzic v. State Univ. of N.Y. at Oswego, 648 Fed.Appx. 125, 128 (2d Cir. 2016) (finding no hostile work environment where the allegedly discriminatory remark was "made by different co-workers in a different section of the ... department" than the prior untimely incidents). Regardless, a single remark evincing a discriminatory intent is an insufficient basis for a hostile work environment claim. Even if it were referring to Harvin's disability, "such an isolated comment [would not] plausibly state a claim for hostile work environment." Carter, 2015 WL 247344, at *9–10 (collecting cases).

## CONCLUSION

The Court has examined for clear error the portions of Magistrate Judge Reyes's R&R to which no objections have been raised and finds none. For the foregoing reasons, the Court adopts the recommendations of the R&R from Magistrate Judge Reyes and grants MaBSTOA's motion to dismiss all claims. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1603872

---

## Footnotes

1     The Amended Complaint is the operative pleading. While "an amended complaint ordinarily supersedes the original ...," Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1997), courts must construe generously pro se civil rights complaints, and read the pleadings and briefs "to raise the strongest arguments they

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 11 of 12 PageID #:297

| | |
|---|---|
| | suggest," Fleming v. City of N.Y., No. 10-CV-3345 (AT), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014). It is "appropriate [therefore] to consider plaintiff's additional materials," including the Complaint, Amended Complaint, and opposition memorandum. Burgess v. Goord, No. 98-CV-2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999). Accordingly, this Court will consider the allegations Harvin makes in her Complaint, her Amended Complaint, her opposition to MaBSTOA's motion to dismiss, the documents she attaches to her opposition to MaBSTOA's motion to dismiss, and her objections to the R&R. |
| 2 | The election of remedies only bars the NYSHRL and NYCHRL claims; the federal claims Harvin asserts in her objection are not barred. See York, 286 F.3d at 126. |
| 3 | This is a larger scope than Magistrate Judge Reyes considered. (See R&R at 6–7.) While Harvin has not sufficiently pleaded that the additional positions are timely, (see Compl.; Am. Compl.), out of an abundance of caution, the Court will examine the merits of Harvin's claims with regard to these positions as well. Because Harvin has not pleaded that she was plausibly qualified for any of these positions, or facts leading to a minimal inference of discrimination, (see Compl.; Am. Compl.), the outcome remains the same. |
| 4 | The Court agrees with Magistrate Judge Reyes that Harvin's other unspecified requests for reassignment, to the extent they are not time-barred, are probative of her allegations that her supervisors discriminated against her by giving her a disproportionately heavy workload, but do not relate to her allegations of failure to accommodate. (See Compl. at 5.) The crux of the allegations is that Harvin was unable to do her work because she was unfairly being given too much of it, not that her physical disabilities rendered her unable to do the type of work that she was engaged in. In any event, the sole specifically alleged and timely request for a transfer is the March 26, 2013 "formal transfer request," (D.E. # 28-1 at 4), which was apparently denied because "no other employee in Operations Planning has the title that" Harvin had, (id. at 5). Harvin's expressions of confusion regarding why this affected her eligibility for a transfer fail to undermine the legitimacy of this contemporaneous non-discriminatory explanation, and MaBSTOA need not undertake an accommodation—such as leaving the payroll department without a class of employee—that would "impose an undue hardship on a program's operation," McElwee v. Cty. of Orange, 700 F.3d 635, 641 (2d Cir. 2012). Furthermore, although Harvin sufficiently pleads that she requested a transfer, she does not articulate to where she requested transfer, or how that reassignment would have better accommodated her disability. See Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 74 (S.D.N.Y. 2016). |
| 5 | Indeed, by her own admission Harvin was not qualified even for the position of staff analyst. In an email to a supervisor regarding her rejected application she stated, "I do not qualify for the Staff Analyst position, because I do not have a degree." (Am. Compl. at 28.) |
| 6 | The deadline for filing for this posting was February 27, 2012, over eight months before the beginning of the 300-day statutory period. Because there is no evidence at this point showing when this position was filled, the Court is considering this claim potentially timely out of an abundance of caution. |
| 7 | Harvin asserts that her 2010 transfer from scheduling to payroll amounted to a materially adverse action because it resulted in a diminishment of material responsibilities. (R&R Obj. at 4.) Whatever the merits of this assertion, the transfer occurred well outside the 300-day window of cognizable claims, and so the Court does not consider it. |
| 8 | Harvin appears to misunderstand the purpose of the similarly situated analysis, and—presumably in an attempt to show that she was treated differently than Amerson—argues in her objections that she "and Ms. Amerson were absolutely not similar in all material aspects." (R&R Obj. at 5.) The Court does not rely upon this possibly inadvertent concession as part of its determination. |

Harvin v. Manhattan and Bronx Surface Transit Operating..., Not Reported in Fed....

Case: 1:23-cv-07631 Document #: 29-10 Filed: 04/17/24 Page 12 of 12 PageID #:298

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.