**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POWERSTOP, LLC | ) | Case No. 23-CV-07631 |
| | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ken Davis ("Plaintiff") filed his First Amended Complaint against PowerStop, LLC ("Defendant") alleging disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's Partial Motion to Dismiss without prejudice [29].

**BACKGROUND**

The following facts are accepted as true for the purpose of resolving Defendant's Partial Motion to Dismiss.

Plaintiff started working for Defendant on or about October 18, 2022, as a warehouse worker. At that time, Plaintiff did not suffer from the disability that he claims forms the basis of this lawsuit. As a warehouse worker, Plaintiff was responsible for working with and operating machinery.

1

In April 2023, while at work, Plaintiff dropped a box of dust that contained silicon crystals that were dispersed into his eye. This injury caused Plaintiff "burning" and permanent vision and eye impairment. Plaintiff alleges that this left him permanently disabled. Despite this disability, Plaintiff was still able to perform the essential functions of his job, with or without reasonable accommodation.

Following the eye injury, Plaintiff inquired about filing a worker's compensation claim and requested light duty or "some other appropriate reasonable accommodations" from Defendant. Plaintiff alleges that his supervisors discouraged him from filing a worker's compensation claim and failed to engage with Plaintiff to determine a suitable reasonable accommodation. Plaintiff alleges that Defendant downplayed his disability by mocking him and telling him to "flush it out with water." Plaintiff alleges that both the request to file a worker's compensation claim and for light duty or another reasonable accommodation were ignored.

Thereafter, Plaintiff reached out to human resources to request accommodation by filing a worker's compensation claim. Shortly after filing the worker's compensation claim, Plaintiff alleges that he received approximately ten frivolous write-ups between April 2023 and June 2023. Plaintiff gives two examples of frivolous write-ups.

First, Plaintiff states he was on his mobile phone "troubleshooting issues" when two supervisors, "Harkeem (LNU) and Ulysses (LNU)," approached him in the breakroom. Plaintiff alleges that the supervisors accused Plaintiff of stealing. Plaintiff attempted to explain that he was trying to resolve issues with his phone as the issues were preventing him from clocking out. Plaintiff informed "Harkeem (LNU) and Ulysses (LNU)" that he planned to leave a note to explain what happened with his phone. Plaintiff contends that they continued to intimidate Plaintiff and eventually wrote him up for the incident.

Second, Plaintiff alleges that an unnamed supervisor wrote Plaintiff up for not completing one of his job duties for the day, known as "scanning." Plaintiff maintains that he did "scan" that day and that unidentified co-workers saw him complete this task. Still, Plaintiff was written up for failing to "scan." On or about May 22, 2023, Plaintiff started reporting the discrimination, harassment, and retaliation he experienced on "Witness Forms."

On June 8, 2023, Plaintiff requested leave from work for an appointment with his eye doctor. He informed his supervisors of the appointment and provided proof of appointment through a doctor's note. Plaintiff was written up for "insubordination." The write-up stated that Plaintiff had been instructed to schedule all personal appointments during non-working hours. The following day, Defendant terminated Plaintiff for "using a machine [Plaintiff] was not certified to use." Plaintiff alleges that he previously used this machine without any issue throughout the tenure of his employment.

Plaintiff alleges that he filed a Charge of Discrimination on the basis of disability and retaliatory discharge with the Equal Employment Opportunity Commission ("EEOC") on June 23, 2023. On or about August 2023, he received the Notice of Right to Sue and filed this lawsuit thereafter.[1]

**LEGAL STANDARD[2]**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations

---

[1] Plaintiff's First Amended Complaint alleges that the Charge of Discrimination and Notice of Right to Sue are attached as Exhibit A and Exhibit B, respectively. There are no exhibits attached to the First Amended Complaint. While the Court will accept the facts pleaded as true for the purpose of resolving Defendant's Partial Motion to Dismiss, the Court directs Plaintiff to file the exhibits, whether or not he chooses to file a Second Amended Complaint to cure the identified deficiencies.

[2] The Court notes that Plaintiff cites to irrelevant caselaw for the Motion to Dismiss legal standard. This Court will use the proper legal standard in this order to evaluate Defendant's Partial Motion to Dismiss.

as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

## DISCUSSION

Defendant moves to dismiss Count I (Disability Discrimination) and Count II (Failure to Accommodate) of Plaintiff's First Amended Complaint for failure to state a claim.

### I.  Count I: Disability Discrimination

The ADA prohibits discrimination against qualified individuals with a disability. 42 U.S.C. § 12131. In order to establish his ADA claim, Plaintiff will eventually be required to show: (1) that he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he has suffered an adverse employment action because of his disability.[3] *See Trent v. D.T. Chicagoland Express, Inc.* No. 18 C 5090, 2019 WL 498943, at *3 (N.D. Ill. 2019) (Ellis, J.) The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more major life activities of the individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1). Not every impairment constitutes a disability under the ADA. *See Hunter v. Carl Buddig and Co.,* No. 24 C 2529,

---

[3] While the parties do not dispute the sufficiency of Plaintiff's ADA claim in this motion, the Court finds that Plaintiff's First Amended Complaint lacks factual allegations to support that he was terminated due to his disability. At this point in this litigation, the only connection Plaintiff has made is between his reporting of the discrimination, harassment, and retaliation and his termination. If Plaintiff chooses to file a Second Amended Complaint, it should include sufficient facts to support his ADA claim to address these deficiencies.

2024 WL 4416749, at *4 (N.D. Ill. 2024) (Kendall, J.)  Merely having a medical condition or physical injury does not itself constitute a disability under the ADA.  *See Blazek v. ADT Security, LLC,* No. 19 C 1822, 2019 WL 2297317, at *4 (N.D. Ill. 2019) (Leinenweber, J.)

The main issue identified by the parties is whether Plaintiff is a qualified individual, and therefore, disabled, under the ADA.  Defendant claims that Plaintiff is not a qualified individual under the ADA because he fails to allege that he suffers from a disability and, to the extent an alleged disability is described, Plaintiff fails to allege that it substantially limits any major life activity. Plaintiff contends that he is a qualified individual with a disability because the incident caused him "burning" and permanent vision and eye impairment and that sight/seeing is considered a major life activity under the ADA.

While the parties do no dispute that sight/seeing is a major life activity, this Court finds that Plaintiff is not a qualified individual under the ADA.  Plaintiff fails to show that the "burning" and permanent vision and eye impairment made him unable to perform, or significantly restricted him as to the condition, manner, or duration under which he could perform, a major life activity as compared to an average person in the general population.  *See Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 450 (7th Cir .2001).  In other words, Plaintiff's allegation that his physical impairment substantially limits his ability to see, which is a majority life activity, is a formulaic recitation of the elements and does not satisfy the pleading standard.  *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

The cases relied on by Plaintiff are unpersuasive.  In *Denson v. Village of Bridgeview,* the court found that plaintiff's 20/400 vision substantially limited him in the major life activities of seeing and working because, without corrective lenses, Plaintiff could not drive, read, discern street signs or building numbers, distinguish peoples' faces, watch television or movies, or work on a computer.  19 F.Supp.2d 829, 834 (N.D. Ill. 1998) (Williams, J.)  In *Mack v. Chicago Transit Authority,* the court found that plaintiff's allegations that she suffered from episodes of vision impairment that impacted

her ability to drive sufficiently supported a finding that her vision impairment substantially limited the major life activities of driving, seeing, and working. No. 17-cv-06908, 2020 WL 6545039, at *2-3 (N.D. Ill. 2020) (Valderrama, J.)

The plaintiffs in both *Denson* and *Mack* offered specific examples to show how their vision impairment affected a major life activity. Absent here is *how* the "burning" and permanent vision and eye impairment substantially limits Plaintiff's sight/seeing as the First Amended Complaint is void of facts. At this stage, Plaintiff fails to set forth any evidence to support a conclusion that his "burning" and permanent vision and eye impairment substantially limits one or more of his major life activities to render him disabled under the ADA.

Likewise, Plaintiff only puts forth conclusory allegations to support a finding of disability based a record of impairment or that Defendant regarded Plaintiff as having such impairment so as to find Plaintiff disabled under the ADA. Plaintiff's allegations are nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* U.S. at 678 (internal quotations omitted). Accordingly, Count I must be dismissed.

## II.    Count II: Failure to Accommodate

The ADA makes it unlawful for an employer to discriminate against a qualified individual with a disability by failing to make reasonable accommodations to the known physical or mental limitations unless the employer can show that the accommodation would impose an undue hardship on the operation of the business. *See* 42 U.S.C. § 12112(b)(5)(A). To state a failure to accommodate claim, a plaintiff must show that (1) he is a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to reasonably accommodate his disability. *Scheidler v. Indiana,* 914 F.3d 535, 541 (7th Cir. 2019); *see also Summerland v. Exelon Generation Co.,* 455 F.Supp.3d 646, 661 (N.D. Ill. 2020) (Feinerman, J.) A reasonable accommodation allows the disabled

employee to perform the essential functions of their job. *Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 481 (7th Cir. 2017).

Defendant contends that Plaintiff failed to allege that he needed a reasonable accommodation to perform the essential functions of his job, that his request for light duty "or some other appropriate reasonable accommodations" does not plausibly allege that he requested a reasonable accommodation, and that his inquiry, and subsequent filing, of the worker's compensation claim is not a reasonable accommodation. Plaintiff alleges that Defendant failed to accommodate his disability by failing to respond to his inquiry about filing a worker's compensation claim and ignoring his request as to whether he was eligible for light duty "or some other appropriate reasonable accommodations."

In his response, Plaintiff cites *McAllister v. Innovation Ventures, LLC,* to support his argument that a disabled individual has a right to request reasonable accommodations under the ADA, regardless of whether he can perform the essential functions of his job, with or without reasonable accommodation. The *McAllister* court made no determination as to whether a plaintiff could request a reasonable accommodation regardless of whether he could perform the essential functions of his job, with or without reasonable accommodation. 983 F.3d 963 (7th Cir. 2020). Rather, Seventh Circuit courts have held that an employer's accommodation duty is triggered only where a qualified individual requires an accommodation in order to be able to perform the essential functions of the job. *Brumfield v. City of Chicago,* 735 F.3d 619, 632 (7th Cir. 2013); *Vande Zande v. Wis. Dep't of Admin.,* 44 F.3d 538, 542 (7th Cir.1995) ("To 'accommodate' a disability is to make some change that will enable the disabled person to work.").

Here, Plaintiff specifically admits that, despite his disability, he was able to perform the essential functions of his job, with or without accommodation. As Plaintiff continued to work in his warehouse worker position, without accommodation, until his termination, it is reasonable to

conclude that Plaintiff was able to perform the essential functions of his job without accommodation. Since Plaintiff fails to properly allege that he needed an accommodation to perform the essential functions of his job, the claim must be dismissed.

Even if Plaintiff properly alleged that he needed an accommodation to perform the essential functions of the job, the failure to accommodate claim still fails. An employer is not required to create a new job or strip a current job of its principal duties to accommodate a disabled employee. *Severson,* 872 F.3d at 482. Nor is an employer required to make temporary light duty work accommodations if there is no policy to do so. *Id.* at 482-3. Nor is an employer required to make temporary light duty work accommodations permanent. *DeVito v. Chicago Park Dist.,* 270 F.3d 532, 534 (7th Cir. 2001). Plaintiff does not allege that light duty work would allow him to perform the essential functions of his job, nor does Plaintiff allege that Defendant had a policy of creating a light duty position as a reasonable accommodation for disabled employees. *See Severson,* at 482.

Plaintiff's request for, and the subsequent filing of, a worker's compensation claim is not a reasonable accommodation. Worker's compensation would require that Plaintiff take a long-term leave of absence. A leave of absence would not allow Plaintiff to perform the essential functions of his job and therefore, worker's compensation is not a reasonable accommodation. *See Nowak v. St. Rita High School,* 142 F.3d 999, 1004 (7th Cir. 1998). Accordingly, Count II must be dismissed. [4]

**CONCLUSION**

For these reasons, the Court grants Defendant's Partial Motion to Dismiss without prejudice [29]. Plaintiff is granted leave to amend his complaint within 21 days if he has a good faith basis for believing he can cure the pleading deficiencies identified in this opinion. If Plaintiff does not file an

---

[4] Plaintiff's argument that discovery will reveal evidence to support Plaintiff's failure to accommodate claim is not a legitimate basis to deny Defendant's motion. A complaint itself must contain sufficient facts to support the claims. *Iqbal,* 556 U.S. at 678. An otherwise deficient complaint cannot be cured through subsequent discovery. *See id.* at 686.

amended complaint within 21 days from the date of this Order, Count I and Count II of Plaintiff's

First Amended Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 11/26/2024

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge